JOHN L. BURRIS, Esq./ State Bar #69888
BENJAMIN NISENBAUM, Esq./State Bar #222173
LAW OFFICES OF JOHN L. BURRIS
Airport Corporate Centre
7677 Oakport Street, Suite 1120
Oakland, California 94621
Telephone: (510) 839-5200 Facsimile: (510) 839-3882
Email: john.burris@johnburrislaw.com
bnisenbaum@hotmail.com

Attorneys for Plaintiffs
KATHLEEN ESPINOSA, et al.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

KATHLEEN ESPINOSA, individually and as personal representative of the Estate of decedent ASA SULLIVAN; A.S., by and through his Guardian ad Litem, NICOLE GUERRA;

Plaintiffs,

vs.

CITY AND COUNTY OF SAN FRANCISCO, a municipal corporation; HEATHER FONG, in her capacity as Chief of Police for the CITY AND COUNTY OF SAN FRANCISCO; JOHN KEESOR, individually, and in his capacity as a police officer for the CITY AND COUNTY OF SAN FRANCISCO; MICHELLE ALVIS, individually and in her capacity as a police officer for the CITY AND COUNTY OF SAN FRANCISCO; PAUL MORGADO, individually and in his capacity as a police officer for the CITY AND COUNTY OF SAN FRANCISCO; and, San Francisco police officers DOES 1-25, inclusive,

Defendants.
/

Case No. C 06 04686 JSW

**FIRST-AMENDED COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS.**
**JURY TRIAL DEMANDED**

INTRODUCTION

On the evening of June 6, 2006, Defendant Officers JOHN KEESOR and MICHELLE ALVIS shot their firearms numerous times and killed Decedent ASA SULLIVAN.  Mr. SULLIVAN was unarmed and had committed no crime. He was in the attic crawlspace attempting to conceal himself from police officers.  Following the unjustifiable killing of Mr. SULLIVAN, Defendant CITY AND COUNTY OF SAN FRANCISCO, through its police department, wrongfully disseminated false information to media sources stating that Mr. SULLIVAN possessed a firearm and had shot at police officers.  Using this false information, Defendant CITY AND COUNTY OF SAN FRANCISCO seemingly manipulated and obtained statements from a member of Mr. SULLIVAN's family to the effect that Mr. SULLIVAN was suicidal.

Defendant CITY AND COUNTY SAN FRANCISCO, through its police department, subsequently withdrew their false claims. In spite of this public retraction, Defendant CITY AND COUNTY OF SAN FRANCISCO, through its police department, including Defendant Officer PAUL MORGADO, in a search warrant affidavit which was available to media sources, claimed that Mr. SULLIVAN had planned to commit "suicide by cop."

The contention by Defendants that Mr. SULLIVAN may have intended to commit "suicide by cop", as published in the San Francisco Chronicle, is without merit.  Mr. SULLIVAN did nothing to cause police to be called out to his location, hid from police officers when they arrived, and never threatened them in any manner before they opened fire and killed him. These are not the actions of a person who intends to commit "suicide by cop." Even if Mr. SULLIVAN was suicidal, there was no rational basis for police officers to use deadly force against him.

## JURISDICTION

1.      This action arises under Title 42 of the United States Code, Section 1983.  Jurisdiction is conferred upon this Court by Title 28 of the United States Code, Sections 1331 and 1343.  The unlawful acts and practices alleged herein occurred in the City and County of San Francisco, California, which is within this judicial district.

PARTIES

2. Plaintiff herein, KATHLEEN ESPINOZA ("ESPINOZA"), is and was at all times herein mentioned the mother of decedent ASA SULLIVAN and is the personal representative of the Estate of decedent ASA SULLIVAN. Plaintiff ESPINOZA is a citizen of the United States residing in the City of Van Nuys in California.

3. Minor Plaintiff herein, A.S., is and was at all times herein mentioned the son of decedent ASA SULLIVAN. He is represented in this action by his mother and Guardian ad Litem NICOLE GUERRA. He is a citizen of the United States residing in the City of South San Francisco in California.

4. Defendant City and County of San Francisco ("CITY") is a municipal corporation, duly organized and existing under the laws of the State of California. Under its authority, the City operates the San Francisco Police Department.

5. At all times mentioned herein, Defendant HEATHER FONG ("FONG") was employed by defendant CITY as Chief of Police for the CITY. She is being sued in her official capacity as Chief of Police for the CITY.

6. At all times mentioned herein, Defendant JOHN KEESOR ("KEESOR") was employed by Defendant CITY as a police officer. He is being sued individually and in his official capacity as a police officer for the City.

7. At all times mentioned herein, Defendant MICHELLE ALVIS ("ALVIS") was employed by Defendant CITY as a police officer. She is being sued individually and in her official capacity as a police officer for the City.

8. At all times mentioned herein, Defendant PAUL MORGADO ("MORGADO") was employed by Defendant CITY as a police officer. He is being sued individually and in his official capacity as a police officer for the City.

9. Plaintiff is ignorant of the true names and capacities of Defendants DOES 1 through 25, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each Defendant so named is responsible in some manner for the

injuries and damages sustained by Plaintiffs as set forth herein. Plaintiffs will amend their complaint to state the names and capacities of DOES 1-25, inclusive, when they have been ascertained.

10. In engaging in the conduct described herein, Defendant police officers acted under the color of law and in the course and scope of their employment with the City. In engaging in the conduct described herein, Defendant police officers exceeded the authority vested in them as police officers under the United States and California Constitutions and as police officers employed by Defendant CITY.

11. Plaintiffs are required to comply with an administrative tort claim requirement under California law. Plaintiffs have complied with all such requirements.

STATEMENT OF FACTS

12. On the evening of June 6, 2006 several San Francisco police officers arrived at 2 Garces Drive. Two San Francisco Police Officers were observed by a neighbor to be peering through the windows of the house located at 2 Garces Drive and also looking through bushes near the residence using their lit flashlights.

13. Decedent ASA SULLIVAN lived at the residence along with a friend, Jason Martin. They moved in recently, in mid-May 2006. Mr. SULLIVAN and Mr. Martin were allowed to live at the residence by friends who were the leaseholders. Mr. SULLIVAN and Mr. Martin made repairs to the residence in exchange for being allowed to occupy the premises.

14. At approximately 8:40 p.m. on June 6, Mr. SULLIVAN woke Mr. Martin, who worked the graveyard shift as a security guard and had been asleep in an upstairs room, and told him that there were police officers outside the residence. At some point shortly afterward, several police officers banged loudly on Mr. Martin's bedroom door, announced themselves as police officers, and ordered him to "open up!" It is unknown how the officers gained entry into the residence.

15. Mr. Martin complied with the order. When he opened the door, he saw that there were two uniformed police officers and several police officers who were dressed in plainclothes. Mr. Martin recognized several of the plainclothes officers as narcotics officers who work out of the Taraval precinct station house. Mr. Martin was familiar with and recognized the officers from when he worked at a 7-11 convenience store located near the Taraval station house. The officers did not

announce the basis of their call, but Mr. Martin was concerned that so many officers, including plainclothes officers, were present.  Plaintiffs allege that each of these officers, including Defendant Officers KEESOR, ALVIS, MORGADO and unknown Officers DOES 1 through 10, are responsible in some manner for the death of Decedent ASA SULLIVAN

16. Without explanation, several officers drew their firearms on Mr. Martin and ordered him to lie face down on the floor. Defendant Officers acted as if they were engaged in a planned law enforcement action although they presented no warrant of any kind.  Mr. Martin complied and lay on the floor in a prone position.  For unknown reasons, one of the Defendant Officers, believed to be a female officer, then handcuffed Mr. Martin with his hands behind his back.  That officer aggressively jammed her knee in Mr. Martin's back and painfully twisted his arm even though there was no basis for such aggressive action.

17. After the officers handcuffed Mr. Martin, they asked him whether anyone else was inside the residence. Before Mr. Martin could answer, the cover over the entry to the attic crawlspace fell down in the bedroom closet.  Approximately three of the plainclothes officers responded to the sound of the fallen attic crawlspace cover by going to the closet.  The officers shined their flashlights up into the attic crawlspace.  Plaintiffs allege that the entryway to the attic crawlspace is approximately 2 feet by 2 feet.  One of the male plainclothes officers attempted to enter the attic crawlspace, but was apparently unable to fit into the entry.

18. Mr. SULLIVAN could be heard moving in the attic crawlspace, and Defendant Officers asked Mr. Martins several times if the person in the attic had any weapons. Mr. Martin accurately responded each time that he was certain that the person in the attic had no weapons.  Mr. Martin had never known Mr. SULLIVAN to carry or possess weapons.  In fact, Defendant Officers were the only people in the residence who possessed any weapons.

19. After officers were unable to get into the crawlspace, they exited the closet and one of the smaller officers present, believed to be Defendant Officer ALVIS, entered the closet. This was the same female officer who had aggressively handcuffed Mr. Martin and kneed him in the back after twisting his arm for no apparent reason. Defendant Officer ALVIS, who was in plainclothes, was joined in the closet by another plainclothes male Defendant Officer, believed to be Defendant Officer

KEESOR. Plaintiffs allege that Defendant Officer ALVIS entered the attic crawlspace followed shortly thereafter by Defendant Officer KEESOR. Meanwhile, one of the uniformed Defendant Officers took Mr. Martin's wallet from him.

20. Mr. Martin could hear Defendant Officer ALVIS and KEESOR yelling down from the attic to the remaining Defendant Officers. Defendant Officers ALVIS and KEESOR appeared to have difficulty locating Mr. SULLIVAN in the attic, and they yelled down to the remaining Defendant Officers that they could not see the person in the attic.

21. After several minutes, the Defendant Officers in the attic announced that they had located the person, who they said was lying down and trying to hide under the cover of wooden beams and insulation. Eventually Mr. SULLIVAN could be heard yelling at the officers in an agitated tone that he had not done anything and pleading for the officers to leave him alone.

22. Defendant Officers ordered Mr. SULLIVAN to come down out of the attic. Some Defendant Officers discussed having a police K-9 (dog) unit come to the scene, and stated that a K-9 unit was en route to the scene from downtown San Francisco. Mr. Martin yelled to Mr. SULLIVAN to come down from the attic, that he was only making matters worse, and that a police dog was coming to the scene. Defendant Officers immediately ordered Mr. Martin to be quiet, and he complied with the order.

23. One of the Defendant Officers was looking though Mr. Martin's personal possessions. Mr. Martin asked why the officer was doing so and why the officers were present, but Defendant Officers ignored him.

24. While the Defendant Officers were in the attic, they relayed Mr. SULLIVAN's position to the remaining Defendant Officers in the room. Some of the Defendant Officers who remained below attempted to locate Mr. SULLIVAN's position in the attic above them by using Defendant Officers KEESOR and ALVIS's instructions and also by tapping the ceiling with their batons. Defendant Officers KEESOR and ALVIS seemed to use the audible sound of the officers tapping on the ceiling to more specifically direct them toward Mr. SULLIVAN. At one point, officers tapped on the ceiling, yielded a solid sound, and the officers in the attic told them "That's

us." They further directed the officers below toward Mr. SULLIVAN. Eventually one of the Defendant Officers yelled out to the effect "He's over the bathroom!"

25. One of the Defendant Officers dressed in plainclothes then went into the bathroom and tapped on the ceiling with his nightstick. Suddenly, in apparent response to the tapping on the bathroom ceiling, several gunshots were fired in the attic. There was no audible verbal communication from the officers in the attic after the plainclothes officer went to the bathroom and the time gunshots were fired, other than the plainclothes officer in the bathroom tapping the bathroom ceiling with his nightstick.

26. The plainclothes Defendant Officer in the bathroom ran back into Mr. Martin's room where other Defendant Officers were located and stated "He shot at me." In fact, Defendant Officers KEESOR and ALVIS were the only people in the attic who possessed firearms. Plaintiffs allege that Defendant Officers KEESOR and ALVIS both shot and killed decedent SULLIVAN, and that Defendant KEESOR also injured Defendant ALVIS when a bullet he fired at Mr. SULLIVAN grazed Defendant ALVIS. One of the shots fired by Defendants KEESOR and ALVIS went through the attic floor and into the bathroom where the plainclothes Defendant Officer had tapped on the ceiling.

27. As noted, Defendant CITY AND COUNTY OF SAN FRANCISCO, by and through members of its police department, has made different claims concerning the events that led to the shooting of Mr. SULLIVAN. First they claimed that Mr. SULLIVAN had a gun and shot through the ceiling at police officers. This was an outright falsehood. Then Defendant CITY AND COUNTY OF SAN FRANCISCO, through members of its police department, claimed that Mr. SULLIVAN pointed an eyeglass case at officers in the attic. Mr. SULLIVAN who wore glasses, was not known to carry an eyeglass case and his glasses were generally observed to either be worn on his face or casually placed in some location, but never to anyone's knowledge who was familiar with him did he store them in an eyeglass case.

28. Defendants, through members of the SAN FRANCISCO Police Department, have since contended that Mr. SULLIVAN told the officers in the attic that he would rather die than go back to jail before allegedly pointing an eyeglasses case at them. Even if Mr. SULLIVAN made such

a statement, it is more likely a figure of speech than a plea for Defendant Officers KEESOR and ALVIS to kill him. If he did make such a statement, it was not audible to people below the attic.

29. Plaintiffs allege that any contention Mr. SULLIVAN intentionally provoked and threatened Defendant Officers KEESOR and ALVIS into shooting him is not supported by any reasonable interpretation of the facts as presented herein. That such a contention by Defendants has been made public has only added to the level of grief and distress felt by Plaintiffs.

30. Plaintiffs allege that Defendant CITY AND COUNTY OF SAN FRANCISCO, by and through members of its police department, subsequently obtained private information regarding Decedent from a family member by providing false information. That false information consisted of the initial claim that Mr. SULLIVAN possessed a gun in the attic and fired it for no explicable reason at officers in a room below him. Plaintiffs allege that Defendant Officers were in a position to immediately verify whether Mr. SULLIVAN possessed any weapon. He did not, and they should have known that he possessed no weapon. Even after Defendant CITY, by and through members of its Police Department, disavowed their initial false claim that Mr. SULLIVAN possessed a weapon, the wrongfully obtained private information has been used to perpetrate a clearly false contention that Mr. SULLIVAN's death was the result of his alleged intention to commit "suicide by cop." Plaintiffs allege that this private information has been used in an attempt by Defendant CITY, by and through members of its police department, to obtain Mr. SULLIVAN's medical records. In sum, this activity by Defendant CITY, through members of its police department, following Mr. SULLIVAN's death, rises to a conscience-shocking level of intentional infliction of emotional distress and trauma upon Mr. SULLIVAN's surviving family-members and loved ones.

31. Plaintiffs allege that Mr. SULLIVAN's death was the result of excessive force used against him by defendant officers.

32. Plaintiffs further allege that Mr. SULLIVAN's death was the proximate result of Defendant CITY's failure to reasonably train their police officers in the proper and reasonable use of force and the making of investigations. Plaintiffs further allege that these substantial failures reflect Defendant CITY's policies implicitly ratifying and/or authorizing the use of excessive force by its

police officers and the failure to reasonably train police officers employed by Defendant CITY in the making of investigations.

33. The killing of decedent ASA SULLIVAN described herein was brutal, malicious, and done without just provocation or cause, proximately causing Plaintiffs' injuries and resulting damages.

DAMAGES

34. Plaintiffs were physically, mentally, emotionally and financially injured and damaged as a proximate result of Mr. SULLIVAN's wrongful death, including, but not limited to, the loss of decedent's familial relationships, comfort, protection, companionship, love, affection, solace, and moral support. In addition to these damages, Plaintiffs are entitled to recover for the reasonable value of funeral and burial expenses.

35. Plaintiffs are entitled to recover wrongful death damages pursuant to C.C.P. Sections 377.60 and 377.61 and Probate Code Section 6402(b). Additionally, Plaintiffs are entitled to the reasonable value of funeral and burial expenses pursuant to C.C.P. Sections 377.60 and 377.61.

36. Pursuant to C.C.P. Sections 377.30, 377.32, and 377.34, plaintiffs are further entitled to recover for damages incurred by decedent before he died as the result of being assaulted and battered, for deprivation without due process of decedent's right to life, and to any penalties or punitive damages to which decedent would have been entitled to recover, had he lived. These damages do not include damages incurred by decedent consisting of pain, suffering, and disfigurement prior to decedent's death.

37. As a further direct and proximate result of the negligence, excessive force and deliberate indifference of defendants, and each of them, Plaintiffs have been deprived of Mr. SULLIVAN's financial support.

38. The conduct of the defendant officers was malicious, wanton, and oppressive. Plaintiffs, as decedent's successors in interest, are therefore entitled to an award of punitive damages against said individual defendants.

39. Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights, and the rights of decedent, under the law. Plaintiffs are therefore entitled to recover all

attorneys' fees incurred in relation to this action pursuant to Title 42 United States Code section 1988.

FIRST CAUSE OF ACTION
(Wrongful Death 42 U.S.C. Section 1983)

40. Plaintiffs hereby re-allege and incorporate by reference herein paragraphs 1 through 39 of this Complaint.

41. Defendants acted under color of law by shooting and killing decedent without lawful justification and subjecting decedent to excessive force thereby depriving Plaintiffs and the decedent of certain constitutionally protected rights, including, but not limited to:

a. The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution;

b. The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution;

c. The right to be free from the use of excessive force by police officers, which is guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution;

d. The right to equal protection of the laws, as guaranteed by the Fourteenth Amendment to the United States Constitution; and/or,

e. The right to be free from interference within the zone of privacy, as protected by the Fourth and Ninth Amendments to the United States Constitution;

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

SECOND CAUSE OF ACTION
(Violations of Plaintiffs' civil rights to familial relationship - 42 U.S.C. section 1983)

43. Plaintiffs hereby re-allege and incorporate by reference herein paragraphs 1 through 42 of this Complaint.

44. Defendants, acting under color of state law, and without due process of law deprived Plaintiffs of their right to a familial relationship by seizing decedent by use of unreasonable, unjustified and deadly force and violence, causing injuries which resulted in decedent's death, all without provocation and did attempt to conceal their excessive use of force and hide the true cause of decedent's demise to deprive Plaintiffs of their right to seek redress, all in violation of rights, privileges, and immunities secured by the First, Fourth, and Fourteenth Amendments to the United States Constitution.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

THIRD CAUSE OF ACTION
(*Monell* - 42 U.S.C. section 1983)

45. Plaintiffs hereby re-allege and incorporate by reference herein paragraphs 1 through 44 of this Complaint.

46. Plaintiffs are informed and believe and thereon allege that high ranking CITY AND COUNTY OF SAN FRANCISCO officials, including high ranking police supervisors such as Defendant FONG, DOES 11 through 25, and/or each of them, knew and/or reasonably should have known about repeated acts of misconduct by Defendant Officers KEESOR, ALVIS, MORGADO and DOES 1-10, and/or each of them.

47. Despite having such notice, Plaintiffs are informed and believe and thereon allege that Defendants FONG, DOES 11-25, and/or each of them, approved, ratified, condoned, encouraged,

sought to cover up, and/or tacitly authorized the continuing pattern and practice of misconduct and/or civil rights violations by said officers.

     48.     Plaintiffs are further informed and believe and thereon allege that as a result of the deliberate indifference, reckless and/or conscious disregard of the misconduct by Defendants KEESOR, ALVIS, MORGADO and DOES 1-10, and/or each of them, Defendant FONG, DOES 11-25, and/or each of them, encouraged these officers to continue their course of misconduct and caused these officers' lack of training, resulting in the violation of the Plaintiffs' rights as alleged herein.

     49.     The aforementioned acts and/or omissions and/or deliberate indifference by high ranking CITY AND COUNTY OF SAN FRANCISO officials, including high ranking CITY AND COUNTY OF SAN FRANCISCO Police Department supervisors, Defendants FONG, DOES 11-25, and each of them resulted in the deprivation of Plaintiffs' constitutional rights including, but not limited to, the following:

    a. The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution;

    b. The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution;

    c. The right to be free from the use of excessive force by police officers, which is guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution;

    d. The right to equal protection of the laws, as guaranteed by the Fourteenth Amendment to the United States Constitution; and/or,

e. The right to be free from interference within the zone of privacy, as protected by the Fourth and Ninth Amendments to the United States Constitution;

50. Said rights are substantive guarantees under the Fourth and/or Fourteenth Amendments to the United States Constitution.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

FOURTH CAUSE OF ACTION
(Survival action: Violation of decedent's civil rights
42 U.S.C. section 1983)
(Plaintiff ESPINOZA as personal representative of decedent)

51. Plaintiffs hereby reallege and incorporate by reference herein paragraphs 1 through 50 of this Complaint.

52. The foregoing claim for relief arose in decedent's favor, and decedent would have been the Plaintiff with respect to this claim if he had lived.

53. Defendants acted under color of law in shooting and killing decedent without lawful justification and subjecting decedent to excessive force, thereby depriving Plaintiffs and the decedent of certain constitutionally protected rights, including, but not limited to:

a. The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution;

b. The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution;

c. The right to be free from the use of excessive force by police officers, which is guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution;

d. The right to equal protection of the laws, as guaranteed by the Fourteenth Amendment to the United States Constitution; and/or,

    e. The right to be free from interference within the zone of privacy, as protected by the Fourth and Ninth Amendments to the United States Constitution.

54. Said rights are substantive guarantees under the Fourth and/or Fourteenth Amendments to the United States Constitution.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

FIFTH CAUSE OF ACTION
(C.C.P. Section 377.60 and 377.61)
Wrongful Death- Negligence
(Plaintiff A.S., by and through his Guardian ad Litem, NICOLE GUERRA)

55. Plaintiff realleges and incorporates by reference herein paragraphs 1 through 54 of this Complaint, except for any and all allegations of intentional, malicious, extreme, outrageous, wanton, and oppressive conduct by defendants, and any and all allegations requesting punitive damages.

56. Defendants CITY, by and through its agents and employees, Defendant Officers KEESOR, ALVIS, MORGADO, and DOES 1-10, negligent actions and/or negligent failure to act, as set forth herein-above proximately caused the death of decedent ASA SULLIVAN, said plaintiff's father, on June 6, 2006.

57. As an actual and proximate result of said defendants' negligence, and the death of decedent, plaintiff has sustained pecuniary loss resulting from the loss of comfort, society, attention, services, and support of his father, decedent, in an amount according to proof at trial.

58. As a further actual and proximate result of said defendant's negligence, plaintiff has incurred funeral and burial expenses, in an amount according to proof at trial.

59. Pursuant to California C.C.P. Sections 377.60 and 377.61, plaintiff has brought this action, and claims damages from said defendants for the wrongful death of decedent, and the resulting injuries and damages.

WHEREFORE, plaintiff prays for relief as hereinafter set forth.

SIXTH CAUSE OF ACTION
(Violation of Civil Code Section 51.7)
(Against defendants KEESOR, ALVIS, MORGADO, and DOES 1-10)

60. Plaintiffs reallege and incorporate by reference herein paragraphs 1 through 59 of this complaint.

61. Plaintiffs are informed and believe and thereon allege that the conduct of defendants KEESOR, ALVIS, MORGADO, and DOES 1-10, inclusive, as described herein, was motivated by racial prejudice against plaintiffs' decedent. Plaintiffs' decedent is and was readily recognizable as African-American. In engaging in such conduct, defendants violated plaintiffs' decedent's rights under California Civil Code Section 51.7 to be free from violence, or intimidation by threat of violence committed against him because of his race.

62. Under the provisions of California Civil Code Section 52(b), defendants are liable an additional $25,000.00 for each violation of Civil Code Section 51.7 for punitive damages and for reasonable attorney's fees.

63. As a proximate result of defendants' wrongful conduct, plaintiffs suffered damages as hereinafter set forth.

WHEREFORE, plaintiffs pray for relief as hereinafter set forth.

SEVENTH CAUSE OF ACTION
(Violation of Civil Code Section 52.1)
(Against Defendants KEESOR, ALVIS, MORGADO, and DOES 1-10)

64. Plaintiffs reallege and incorporate by reference herein paragraphs 1 through 63 of this Complaint.

65. The conduct of Defendants KEESOR, ALVIS, MORGADO, and DOES 1-10, inclusive, as described herein, acting in the course and scope of their employment for Defendant CITY, violated California Civil Code Section 52.1, in that through the wrongful assault and battery and killing of

plaintiffs' decedent they interfered with plaintiffs' decedent's exercise and enjoyment of his civil rights.

66. As a direct and proximate result of defendants' violation of Civil Code Section 52.1, decedent suffered violation of his constitutional rights, and suffered damages as set forth herein.

67. Since this conduct occurred in the course and scope of their employment, defendant CITY is therefore liable to plaintiffs pursuant to respondeat superior.

68. Plaintiffs are entitled to injunctive relief and an award of their reasonable attorney's fees pursuant to Civil Code Section 52.1(h).

WHEREFORE, plaintiffs pray for relief, as hereinafter set forth.

EIGHTH CAUSE OF ACTION
(Assault and Battery)
(Against defendants KEESOR, ALVIS, MORGADO, and DOES 1-10)

69. Plaintiffs reallege and incorporate by reference herein paragraphs 1 through 68 of this Complaint.

70. Defendants KEESOR, ALVIS, MORGADO, and DOES 1-10, inclusive, placed plaintiffs' decedent in immediate fear of death and severe bodily harm by shooting him without any just provocation or cause.

71. These defendants' conduct was neither privileged nor justified under statute or common law.

NINTH CAUSE OF ACTION
(Negligent Hiring, Retention, Training, Supervision, and Discipline)
(Against Defendant CITY, FONG, and DOES 11-25)

72. Plaintiffs reallege and incorporate by reference herein paragraphs 1 through 71 of this Complaint, except for any and all allegations of intentional, malicious, extreme, outrageous, wanton, and oppressive conduct by defendants, and any and all allegations requesting punitive damages.

73. At all times mentioned herein, defendant CITY, by and through its agents and employees; FONG; and DOES 11-25, inclusive, has and had a mandatory duty of care to properly and adequately hire, train, retain, supervise, and discipline its police officer employees so as to avoid unreasonable risk of harm to citizens. With deliberate indifference, CITY, FONG, and DOES 11-25, inclusive, failed to take necessary, proper, or adequate measures in order to prevent the violation of decedent's and plaintiffs' rights, the suffering and death of decedent, and injury and damages to decedent and plaintiffs. CITY, FONG, and DOES 11-25, inclusive, failed to adequately train CITY employees and police officers, including Defendant Officers KEESOR, ALVIS, MORGADO, and DOES 1-10, inclusive, in the proper and reasonable use of force, warrantless entry into residences, handling of mentally impaired or potentially suicidal subjects, and handling of barricaded subjects , and/or failed to have adequate policies and procedures regarding the use of force, warrantless entry into residences, handling of mentally impaired or potentially suicidal subjects, and handling of barricaded subjects. This lack of adequate supervisorial training, and/or policies and procedures demonstrates the existence of an informal custom or policy of promoting, tolerating, and/or ratifying the continuing deliberately indifferent failure to the use of excessive force, warrantless entry into residences, handling of mentally impaired or potentially suicidal subjects, and the handling of barricaded subjects by police officers employed by the CITY.

74. As a proximate result of defendants CITY, FONG, and DOES 11-25, inclusive's negligent conduct, decedent and plaintiffs suffered damages including severe emotional and mental distress and injury having a traumatic effect on decedent's and plaintiffs' emotional tranquility.

WHEREFORE, plaintiffs pray for relief as hereinafter set forth.

JURY DEMAND

75 Plaintiffs hereby demand a jury trial in this action.


PRAYER

WHEREFORE, Plaintiffs pray for relief, as follows:

1. For general damages in a sum of $10,000,000.00;
2. For special damages in a sum according to proof;
3. For punitive damages in a sum according to proof;
4. For reasonable attorney's fees pursuant to 42 U.S.C. Section 1988;
5. For injunctive relief;
6. For cost of suit herein incurred; and
7. For such other and further relief as the Court deems just and proper.

Dated: January 12, 2007

**The Law Offices of John L. Burris**

/s/ John L. Burris ________________________
John L. Burris
Attorney for Plaintiff