1  JOHN L. BURRIS, STATE BAR NO. 69888
2  BENJAMIN NISENBAUM (SBN 222173)
   ADANTE DE POINTER (SBN 236229)
3  Law Offices of John L. Burris
   Airport Corporate Centre
   7677 Oakport Road, Suite 1120
4  Oakland, California  94621
   Telephone:    510.839.5200
5  Facsimile:     510.839.3882
   Email: bnisenbaum@gmail.com
6
7  Attorneys for Plaintiffs

8              UNITED STATES DISTRICT COURT

9       NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

10
11  KATHLEEN ESPINOSA, et al.,          )  Case No.: C06-04686 JSW
                                        )
           Plaintiffs,                  )  **PLAINTIFFS' MOTION IN LIMINE NO.**
12                                      )  **4 TO EXCLUDE TESTIMONY OF**
        vs.                             )  **DEFENSE EXPERT, ANTHONY J.**
13                                      )  **BRASS, EVIDENCE OF A SWAP**
                                        )  **WARRANT FOR DECEDENT'S ARREST,**
14  CITY AND COUNTY OF SAN              )  **AND PRIOR CRIMINAL HISTORY**
    FRANCISCO, et al.,                  )
15                                      )
           Defendants.                  )
16                                      )  Trial Date: December 2, 2013
                                        )  Trial:  8:00 a.m.
17                                      )  Pretrial Conf.: April 1, 2013
                                        )  Time:  2:00 p.m.
18                                      )  Courtroom 11, 19th Floor
                                        )  The Honorable Jeffrey S. White
19                                      )
20  _____
21
22
23
24
25
26

Plaintiffs' Motion in Limine No. 4 to Testimony of Anthony Brass, Swap Warrant, et al.
Espinosa v. City and County of San Francisco, Case No.   C06-04686 JSW

# I.  INTRODUCTION

Plaintiffs move the Court for an Order excluding the testimony of defense expert, Anthony J. Brass, an attorney, evidence concerning a "Swap" warrant for the decedent's arrest, and the decedent's criminal history on which Mr. Brass relies on for his opinions, because this evidence is irrelevant under FRE 401-402.  This evidence should also be excluded under FRE 403 because any probative value the evidence may have is substantially outweighed by its prejudicial effect, the likelihood of jury confusion and because it will waste the Court's time and resources.  In addition, Mr. Brass' testimony does not meet the requirements of expert testimony under FRE 702 and *Daubert* and is largely based on pure speculation and conjecture.

# II.  STATEMENT OF FACTS

On June 6, 2006, San Francisco Police Officers, Paul Morgado, Michelle Alvis and John Keesor entered 2 Garces Drive in the Park Merced apartment complex without a warrant where Asa Sullivan was living a guest.  Prior to encountering Mr. Sullivan in the attic of the premises, it is undisputed the officers had no evidence that there had been any warrant issued for his arrest. When Mr. Sullivan was asked whether there was a warrant after the three officers cornered him in the attic at gunpoint, he responded, "maybe," but did not affirmatively confirm the existence of a warrant or the specific nature of the warrant.

Nevertheless, the defense intends to call Anthony Brass, an attorney, to offer highly speculative opinions about the ultimate disposition of Mr. Sullivan's underlying criminal matter had he been arrested on a "Swap" warrant for his alleged failure to report for a Court Ordered work program. A copy of Mr. Brass' Rule 26 report is attached as Exhibit 1.

In support of Mr. Brass' opinions about the ultimate disposition of Mr. Sullivan's underlying criminal case and the prison time Mr. Brass opines Mr. Sullivan would have served

Plaintiffs' Motion in Limine No. 4 to Testimony of Anthony Brass, Swap Warrant, et al.
Espinosa v. City and County of San Francisco, Case No.   C06-04686 JSW

had he been taken into custody on the "Swap" warrant, Mr. Brass presumes that Mr. Sullivan would have also been charged with a violation of resisting arrest (PC Section 148) and possession of drug paraphernalia (H&S Code Section 11364) as a result of the subject incident (Ex. 1, Brass Rule 26 report, pp. 1 and 6). In making this assumption, Mr. Brass completely ignores the fact that the officers entered the subject premises without a warrant and that it was also very likely that Mr. Sullivan would not have suffered a new criminal conviction because evidence obtained by the officers' warrantless entry would have likely been excluded due to the violation of Mr. Sullivan's Fourth Amendment rights. (See, e.g., *United States v. Perea-Rey*, 680 F.3d 1179 (9th Cir. 2012)(Application of exclusionary rule where officers discovered the illegal status of occupants of a premises as a result of a warrantless search; *United States v. Dillard*, 2010 U.S. Dist. LEXIS 141038 (D. Nev. 2010)(Application of exclusionary rule where suspect in custody for purposes of *Miranda* when questioned while surrounded by multiple officers at gunpoint).

Moreover, Mr. Brass' opinion to the effect that Mr. Sullivan's attorney and probation officer had informed him about the existence of this warrant; that he would have been "well admonished" by both his defense attorney and probation officer about the consequences of failing to report to Swap; and had "actual notice" that he would have been arrested the "moment he was identified," incarcerated in the San Francisco County jail without the possibility of bail," and would have "almost certainly" faced "a sentence of 32 months in State Prison (Ex. 1, p. 6), is not based on a scintilla of evidence and is based on pure speculation and conjecture. There is no evidence cited to in Mr. Brass' report establishing any foundation for Mr. Brass' conclusions about the content and extent of any admonishments given to Mr. Sullivan by his attorney and

Plaintiffs' Motion in Limine No. 4 to Testimony of Anthony Brass, Swap Warrant, et al.
Espinosa v. City and County of San Francisco, Case No.   C06-04686 JSW

2

probation officer or that Mr. Sullivan had actual notice of the eventual outcome of his underlying

criminal case.

Similarly, Mr. Brass' opinion that Mr. Sullivan's criminal attorney would have told Mr.

Sullivan that his chances of obtaining a reduction on his potential sentence via a *Romero* motion

is also based on pure speculation, as there is absolutely no evidence that this occurred or that Mr.

Sullivan had any knowledge that a *Romero* motion would not have been successful prior to the

subject incident.  This kind of speculation is the kind of 20/20 hindsight that the Supreme Court

has determined should play no role in evaluating whether an officer's use of force was excessive

under the circumstances and should be excluded at trial.  *See, e.g.*, *Graham v. Connor*, 490 U.S.

386. 397 (1989).

## III.  ARGUMENT

### A.  The Existence of a "Swap Warrant, Decedent's Criminal History and the Testimony of Defense Expert, Anthony Brass, Should be Excluded at Trial

F.R.E. 402 provides that evidence which is not relevant is not admissible.  "Relevant

evidence" is evidence "having any tendency to make the existence of any fact that is of

consequence to the determination of the action more probable or less probable than it would be

without the evidence.  F.R.E. 401.  F.R.E. 403 provides that even relevant evidence may be

excluded if "its probative value is substantially outweighed by the danger of unfair prejudice,

confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of

time, or needless presentation of cumulative evidence."  The Ninth Circuit has held that "unfair

prejudice" is the tendency "to suggest decision on an improper basis, commonly…an emotional

one."  *U.S. v. W.R. Grace,* 504 F.3d 745, 759 (9th Cir. 2007)(quoting the Advisory Committee

Plaintiffs' Motion in Limine No. 4 to Testimony of Anthony Brass, Swap Warrant, et al.
Espinosa v. City and County of San Francisco, Case No.   C06-04686 JSW

Notes to F.R.E. 403).  F.R.E. 404(b) also precludes the admission of prior bad acts to prove that a party acted in conformity with his alleged bad character on a later occasion.

F.R.E. 702 provides that expert testimony is admissible if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."  Expert testimony under Rule 702 must be both relevant and reliable.  *Daubert v. Merrell Dow Pharms, Inc.,* 509 U.S. 579, 589 (1993).  In deciding whether to permit expert testimony under F.R.E 702, the Court must act as a "gatekeeper," by making a determination of whether the expert's proposed testimony is reliable.  *Elsayed Mukhtar v. Cal. State Univ. Hayward,* 299 F.3d 1053, 1063 (9th Cir. 2002), *amended by,* 319 F.3d 103 (9th Cir. 2003). However, expert testimony may be excluded where its probative value is substantially outweighed by its prejudicial effect, likelihood of jury confusion and/or it will unduly waste the Court's time and resources under F.R.E. 403.

Furthermore, "an expert's opinion may not be based on assumptions of fact without evidentiary support, or on speculative or conjectural factors." *Richter v. Hickman,* 578 F.3d 944, 987 (9th Cir. 2009), *reversed on other grounds,* __U.S.___, 131 S. Ct. 770 (2010), *on remand,* 634 F.3d 1238 (9th Cir. 2011); *see also United States v. Rushing,* 388 F.3d 1153, 1156 (8th Cir. 2004) ("Expert testimony should not be admitted when it is speculative, it is not supported by sufficient facts, or the facts of the case contradict or otherwise render the opinion unreasonable."); *Guidroz-Brault v. Mo. Pac. R. Co.,* 254 F.3d 825, 830-31 (9th Cir. 2001) (excluding expert testimony that "was not sufficiently founded on the facts" of the case).

The proponent of the expert's testimony bears the burden of proving admissibility. *Lust v. Merrell Dow Pharms., Inc.,* 89 F.3d 594, 598 (9th Cir. 1996). To meet this burden, the party presenting the expert must provide "some objective, independent validation of the expert's

Plaintiffs' Motion in Limine No. 4 to Testimony of Anthony Brass, Swap Warrant, et al.
Espinosa v. City and County of San Francisco, Case No.   C06-04686 JSW

4

methodology" showing that the expert's findings are based on "sound science." *Daubert v.*

*Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995), *cert. denied,* 516 U.S.

869 (1995)(Proponent's failure to meet this burden warrants exclusion of the proffered expert

testimony). In this case, Mr. Brass' opinions are based on speculation and conjecture, lack

foundation, and fail to meet the standards for expert testimony under FRE 702-703 and *Daubert*.

First, Mr. Brass' opinion about the sentence Mr. Sullivan would have faced had he been

arrested on the Swap warrant is based on conjecture and speculation.  Under California law, the

sentencing judge retains the discretion to determine an appropriate sentence in each case and

must evaluate the criteria in imposing a sentence on a case by case basis.  See, Cal. Rule of Court

4.408.  Moreover, the Court would have been obligated to obtain a presentence report from Mr.

Sullivan's probation officer under Cal. Rule of Court 4.411, which would have been considered

by the Court in deciding not only the length of any sentence to be imposed, but the facility where

the sentence would be served.  Therefore, Mr. Brass' opinion to the effect the Mr. Sullivan

would have necessarily been actually sentenced to 32 months in State Prison is highly

speculative given the discretion reserved to the sentencing judge in choosing an appropriate

sentence in a particular case.

Mr. Brass' opinion that Mr. Sullivan would have been convicted, or that his probation

would have necessarily violated, as a result of the subject incident is also highly speculative

given the likelihood that evidence gained by the officers' warrantless entry into the subject

premises and their questioning of Mr. Sullivan at gunpoint without issuing any Miranda

warnings would have been the subject of suppression motions had Mr. Sullivan survived.

Mr. Brass' opinions to the effect that Mr. Sullivan would have been informed about the

existence of the warrant by his criminal defense attorney and probation officer is also not

Plaintiffs' Motion in Limine No. 4 to Testimony of Anthony Brass, Swap Warrant, et al.
Espinosa v. City and County of San Francisco, Case No.   C06-04686 JSW

supported by a single scintilla of evidence in the record.  Similarly, the record is devoid of any evidence that Mr. Sullivan's criminal attorney put him on "actual notice," that he would be immediately arrested, held without bail and sentenced to 32 months in State Prison, as a result of the Swap warrant at any time prior to the subject incident. Given the highly speculative nature of this evidence, it does not meet the standards for expert testimony under FRE 702-703 and *Daubert* and should be excluded at trial.

Even if this evidence was somehow admissible, it should be excluded under FRE 403 because any probative value it may have is substantially outweighed by its prejudicial effect, likelihood of jury confusion, and the unnecessary waste of the Court's time and resources at trial. This is particularly true in light of the undisputed fact that the defendant officers had no knowledge of Mr. Sullivan, much less that he had an outstanding "Swap" warrant for his alleged failure to report to a Court Ordered work program, when they entered the subject apartment without a warrant.  As a result, the warrant, the underlying criminal proceedings and the possible sentence Mr. Sullivan could face if convicted, are clearly not relevant to the determination of whether the warrantless entry and search violated the Fourth Amendment and whether the officers' use of force on Mr. Sullivan was excessive under the circumstances they faced at the time the force was used.

As the Ninth Circuit noted in its decision in this case, Fourth Amendment claims are analyzed under an "objective reasonableness standard." See, *Espinosa v. City and County of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2012), *cert. denied sub nom, Alvis v. Espinosa*, __U.S.__, 132 S. Ct. 1089 (2012).  This standard balances the intrusion on the individual's Fourth Amendment rights against the government's interests to determine whether the officers' conduct was objectively reasonable based on a totality of the circumstances that confronted the officers

Plaintiffs' Motion in Limine No. 4 to Testimony of Anthony Brass, Swap Warrant, et al.
Espinosa v. City and County of San Francisco, Case No.   C06-04686 JSW

when the force was used, not on 20/20 hindsight.  As the Ninth Circuit noted, in deadly force cases such as the instant one, "where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." *Id.*, *quoting, Tennessee v. Garner*, 471 U.S. 1, 11-12 (1985).

Therefore, whether Mr. Sullivan had a warrant, and even if he had been advised of its existence and the possible exposure he had to serving prison time if the underlying criminal matter was resolved against him, is clearly not relevant to whether the defendants violated his Fourth Amendment rights by entering the premises without a warrant, detaining him at gunpoint with no evidence he had committed a crime, and subjecting him to the use of excessive deadly force.

This evidence should also be excluded at trial under F.R.E. 403 because any probative value it could possibly have is far outweighed by the substantial likelihood that it will prejudice the jury against the Plaintiffs, result in jury confusion and cause a substantial and unnecessary waste of the Court's time and resources.

Dated:  March 4, 2013                       _____/S/_____
                                            Benjamin Nisenbaum
                                            Attorney for Plaintiffs

Plaintiffs' Motion in Limine No. 4 to Testimony of Anthony Brass, Swap Warrant, et al.
Espinosa v. City and County of San Francisco, Case No.   C06-04686 JSW

April 24, 2008

*Espinosa et al. v. CCSF, Heather Fong, John Keesor, Michelle Alvis and Paolo Morgado*
**U.S. District Court, Northern District of California, Case No. C06-4686 JSW**

| | |
|---|---|
| **To:** | **Peter Keith, Deputy City Attorney** |
| **From:** | **Anthony J. Brass, Attorney at Law** |
| **Re:** | **Analysis of the Effect of California Sentencing upon the Convictions of Asa Sullivan** |

### Summary of Opinion

According to court documents, Asa Sullivan was facing a period of certain imprisonment the moment he was identified by San Francisco Police Officers on June 6, 2006. The officers would be duty bound to identify everyone on the premises. Once identified, Asa Sullivan would have been immediately arrested and incarcerated without bail, due to an outstanding SWAP warrant suffered as a result of his failure to report to the court ordered work program. In addition, he would have been transferred to San Mateo County for sentencing on an adjudicated felony theft conviction, as a result of which he would be sentenced to 32 months in State Prison.

Even though the sentencing court had stated it would consider a motion to reduce that sentence, pursuant to a Romero motion; such a motion requires a defendant to live a law abiding life for a meaningful period of time. The fact that Mr. Sullivan had consistently performed poorly as a probationer, was on felony probation at the time of the new offense, and was found on June 6, 2006 resisting arrest, in possession of drug paraphernalia, and methamphetamine, fortify the idea that such a motion had no chance of success.

### The Three Convictions

This conclusion is a result of the following three convictions suffered by Mr. Sullivan between 1999, and 2005:

| | | | |
|---|---|---|---|
| 1) | San Mateo Case No. SC45211A | Pen.Code Sec. 212.5(c)/fel. | (7/12/99) |
| 2) | San Francisco Case No. 195776 | H&S Code Sec. 11359/fel. | (5/27/05) |
| 3) | San Mateo Case No. NF353996 | Pen.Code Sec. 666 & 460(b)/fel. | (12/19/05) |

EXHIBIT 1

### The Strike Conviction

The conviction in San Mateo Case No. SC45211A constitutes a strike, under California's Three Strikes Law. This strike would have two effects on the penalties of future offenses: first, it would *double the sentence* of any subsequent conviction, and second, it would *limit the amount of credit* Mr. Sullivan would receive while incarcerated to 20%. (Instead of the usual 50%, credited to non-strike offenders).

On July 12, 1999, Mr. Sullivan plead guilty to the charge or robbery, a violation of Penal Code Section 212.5(c), a felony. He also admitted that this offense constitutes a "strike" pursuant to Penal Code Section 1192(c)(19). Although the maximum penalty for his offense is 5 years, Mr. Sullivan received probation and a sentence that was not to exceed 9 months. In fact, he received a sentence of 8 months in the county jail, and 4 years of probation from Judge Mark R. Forcum. (Asa Sullivan was incarcerated beginning 6/3/99, and presumable served out his 8 month sentence).

During the four years of probation, the probation department filed three motions to have Mr. Sullivan's probation revoked due to unsatisfactory performance as a probationer.

1)      On 12/10/00, a report from the San Francisco Police Department, regarding another robbery, and a charge of resisting arrest, formed the basis of one motion to revoke probation, (hereafter "MTR"). Mr. Sullivan was held without bail due to the fact that he was on felony probation at the time of the arrest. He was sentenced to serve 9 months in the county jail, or through a residential treatment program, due to this violation of probation.

2)      On 1/31/03, another MTR was filed for Mr. Sullivan failing to participate in a treatment program as ordered, failure to pay fines as ordered, and failure to report his whereabouts to his probation officer as ordered. A no bail warrant was issued on 2/18/03. Mr. Sullivan was arrested and held without bail on 2/23/03. On 4/15/03, he was found to have violated the terms and conditions of probation. His probation was reinstated on the condition that he serve 9 months in the county jail and waive earlier credit. The 9 month sentence could also be served in a residential treatment program. (He was incarcerated from 2/23/03 - 4/15/03)

3)      On 3/11/04, another MTR was filed due to Mr. Sullivan's failure to show up for court as ordered. On 4/21/04, Mr. Sullivan received 90 days in county jail for this last violation. His probation termination date was extended for one additional year to August 6, 2004. (He was incarcerated from 3/11/04 to at least 4/21/04, the remaining days may have been served in jail or in a work program)

### The Marijuana Trafficking Case

On May 5, 2005, in San Francisco case number 2216488, the District Attorney charged Asa Sullivan with two felony counts of narcotics trafficking:

*Count I*
A violation of Health and Safety Code 11360(a), transportation or sale of  marijuana.

*Count II*
A violation of Health and Safety Code 11359, possession of marijuana     with the intent to distribute.

Each of these offenses carries a sentence of 16 months, 2 years, or 3 years in State Prison. This sentence can be suspended if probation is granted, and later imposed, if the conditions of probation are violated.

On May 27, 2005, Mr. Sullivan entered a guilty plea to Count II, and Count I was dismissed.  (He was incarcerated from 5/4/05 to 5/27/05).

On June 27, 2005, the imposition of sentence was suspended, and he was granted probation. Mr. Sullivan had served 24 days in the county jail, and he was ordered to perform drug testing and counseling, and to obey all laws.  If Mr. Sullivan violated these conditions, a sentence of 16 months, 2 years or 3 years in state prison could be imposed without a trial.

On October 13, 2005, Mr. Sullivan was arrested and held in custody without bail for violating two of the conditions of his probation; specifically, 1) possessing methamphetamine, and 2) violating the court ordered stay away, which ordered him to stay away from the area of 5th and Market Streets in San Francisco.  (He was incarcerated from 10/13/05 to 10/25/05).

On October 25, 2005, Mr. Sullivan admitted violating the terms of probation, and was sentenced to serve 6 months in the county jail, through the Sheriff's work alternative program (SWAP), or through the counseling programs supervised by the Sheriff's Department.  His probation termination date was extended to July 9, 2008.  He received 37 actual days of credit against the 6 month sentence.

A defendant serving a six month county jail sentence must receive credits of 180 days, and receives 50% credit for actual jail time.  This means that 180 days of credit are given for serving 90 days *in jail*.  If a defendant is given the chance to serve his time in a work program, he must serve the time day-for-day, with no "good time" credit.

According to San Francisco County Jail records, Mr. Sullivan was released from county jail on October 25, 2005, after serving 12 days in county jail for this violation.  The court

gave Mr. Sullivan credit for 24 days against that 180 day commitment. This left a remainder of 156 days. Mr. Sullivan could then have elected to serve that time in the work program, or to serve 78 additional days in the county jail.

Mr. Sullivan was to report to Sheriff's Work Alternative Program (hereafter, "SWAP") on December 7, 2005. Mr. Sullivan did not do so. The very moment that he failed to report to the program, a SWAP warrant could be issued by the Sheriff's department. This warrant requires that the defendant be arrested and held without bail until his sentence is served. After a defendant is arrested on such a warrant, that defendant is ineligible to participate in SWAP, and must serve his time *in jail*. Such a warrant did in fact issue on May 24, 2006. At that time, Mr. Sullivan had 78 days left to serve on his sentence, and pursuant to Penal Code Section 4024.2b, a warrant for Asa Sullivan's arrest was issued due to his failure to appear.

Mr. Sullivan would have been advised that such a warrant would issue in the event of his failure to appear for SWAP, by both his attorney and his probation officer. In addition, he would have been advised of this by the Sheriff upon his release and by the SWAP office if he ever reported there.

### The Adjudicated Theft Case

On December 19, 2005, in San Mateo County case number NF353996, the District Attorney filed two felony charges against Asa Sullivan for a theft that occurred on 11/16/05: (He bailed out of jail on 11/17/05)

*Count I*
A violation of Penal Code section 460(b) entering a non-residential establishment with the intent to commit larceny or a felony, and

*Count II*
A violation of Penal Code section 666, larceny after having been previously convicted of a theft offense, in this case a robbery, the violation of Penal Code Section 212.5(c) on 8/6/99.

A Superior Court Judge found that there was probable cause to hold the defendant for trial after a preliminary hearing.

On May 8, 2006, Mr. Sullivan, represented by attorney Harvey D. Mittler, entered a plea of *nolo contendere* to both charges. He also admitted his prior robbery conviction, and admitted that the robbery conviction was a strike pursuant to penal code section 1170.12(c)(1).

Again, Mr. Sullivan's strike conviction would have two effects on the penalties for these new offenses:

> 1) It would double the amount of time of the sentence imposed, and

> 2) It would limit the amount of credit Mr. Sullivan would receive while incarcerated to 20%. (Not the usual 50%, credited to non-strike offenders).

Pursuant to that plea, the parties agreed that the maximum sentence Mr. Sullivan would face would be six years in state prison. This accurately reflects the maximum penalties for these offenses. (Both counts in the information, the violation of Penal Code Section 460, and the violation of Penal Code Section 666 would merge, pursuant to Penal Code Section 654, as they are the result of the same set of operative facts.) Each of these counts carries the same penalties, a range of 16 months, 2 years, or 3 years in state prison.

Therefore, the maximum penalty, Mr. Sullivan faced for these offenses would be the aggravated term of 3 years, doubled due to prior strike conviction, for a total of six years, of which he would have to serve at least 80%.

However, the parties also agreed, in that written plea, that Mr. Sullivan would receive a sentence not greater than 32 months. This sentencing court would arrive at this term by taking the mitigated term of 16 months, and doubling it due to the strike prior. In that written plea agreement, the court indicated that it would:

> *consider a "Romero" motion at the time of sentence, and may, if granted, sentence defendant to 16 months in prison (at 50%) or grant probation and sentence up to 12 months in county jail.*

### The Romero Motion

A "Romero" motion is an effort on the part of a criminal defendant to have the sentencing court disregard a prior strike conviction, or "strike the strike." Such a motion is granted by sentencing courts after considering a variety of factors. Generally, such relief is granted when a strike conviction is remote in time (usually over ten years), and the defendant has lived a law abiding life for that time. Another factor that can be considered is the new offense being on a different class of offense than the strike.

Given the circumstances, however, it is highly unlikely that the relief sought under the Romero motion would have been granted for six reasons.

1) Mr. Sullivan was arrested and convicted just six years after the strike conviction;

2) His new offense was another theft crime, that is to say, it was in the same class of offense as the strike;

3) He consistently performed poorly as a probationer following the strike conviction, having had his probation revoked and modified several times;

4) The fact that Mr. Sullivan was arrested and convicted of another felony, narcotics trafficking, between the date of the strike conviction and the new case;

5) He committed the new offense after having so recently been placed on probation for a new narcotics trafficking case; and

6) On June 6, 2006, he committed three new offenses: he resisted arrest, a violation of Penal Code Section 148(a), and was found in possession of drug paraphernalia, a violation of Health and Safety Code Section 11364. Both of these offenses could be filed as a new case, or simply charged as a violation of the conditions of his current San Francisco felony probation.

Considered together, these six factors simply overwhelm any argument that could be made in favor of relief under Romero. Any competent defense attorney would have been duty bound to advise his client, before entering a plea agreement, that the chances of success of avoiding a 32 month sentence under Romero were so remote, as to be virtually non-existent.

### Conclusion

On June 6, 2006, Mr. Sullivan would have been well admonished by both his defense attorney, and his probation officer about the consequences of failing to report to SWAP. That is to say, he would have been on actual notice that he would have been arrested the moment he was identified, and incarcerated in the San Francisco County jail without the possibility of bail. From there, he would have been transferred to San Mateo County, where he was almost certainly facing a sentence of 32 months in State Prison, of which he would actually have to serve 80%.

In addition to this, Mr. Sullivan was also on felony probation in San Francisco, with a suspended sentence of 16 months, 2 years, or 3 years in State Prison. He had already violated the terms of that probation once, and the plea to his new felony in San Mateo County could have resulted in the imposition of that sentence; especially when coupled with the fact that on June 6, 2006 he resisted arrest, and was found in possession of drug paraphernalia.

Dated: May 2, 2008

Anthony J. Brass
Attorney at Law

**ANTHONY J. BRASS, Attorney at Law**
**3223 Webster Street, San Francisco, CA 94123  (415)922-5462**

---

*EXPERIENCE*

**Law Office of Anthony J. Brass** (May 2006-Present)
Currently representing defendants in both state and federal court, for offenses that include
federal anti-trust conspiracies, multiple defendant narcotics trafficking conspiracies
investigated by way of federal wire taps, and special circumstance murder cases.

> *-Member of the Federal CJA Panel*
> *-Member of the San Francisco Bar Association Indigent Defender Program*

**San Francisco District Attorney's Office** (September 2004 – May 2006)
Recruited back to this office to work with the San Francisco Gang Task Force.  Lead a
multi-agency wire tap investigation that lead to the arrest and indictment of four members
of the Oakdale Mob criminal street gang.

**United States Attorneys' Office, NDCA** (December 2002 – September 2004)

*Organized Crime Drug Enforcement Task Force (OCDETF)* Prosecuted complex
multiple defendant drug trafficking conspiracies, including Operation Navigator, a 26
defendant methamphetamine trafficking ring from Antioch and Pittsburg, California.

*Major Crimes Unit*.  Prosecuted offenses such as identity theft and bank robbery.
Convicted the Baby Face Robbers, a crew of four men responsible for 27 armed take over
robberies in the San Francisco Bay Area.

**San Francisco District Attorney's Office** (September 1995-December 2002)

*Homicide Unit*: Prosecuted gang related homicide cases, including the brazen daylight
shooting death of a Sureno gang member at the hands of a dozen rival Norteno gang
members.

*Gang Violence Unit*: Prosecuted both Hispanic and African American gangs from San
Francisco's Mission District to San Francisco's Housing projects.  Responsible for the
successful conviction of the "Hitman" for the notorious Big Block criminal street gang.

*Narcotics Unit*: Prosecuted felony drug cases, such as possession with intent to distribute,
and sales to undercover police officers.

*Felony Domestic Violence Unit*: Prosecuted the most serious domestic violence cases,
and achieved San Francisco's first three strikes domestic violence conviction.

*Preliminary Hearing Unit*: Performed hundreds of preliminary hearings for felony offenses such as felonious gun possession, narcotics possession, narcotics trafficking, aggravated assault, and attempted murder.

*Misdemeanor Unit*:  Prosecuted offenses such as driving under the influence, and assault and battery. Tried 9 misdemeanor jury trials in nine months.

*EDUCATION*

**Golden Gate University School of Law**, Juris Doctor 1994.
Merit Scholar 1992.
Mock Trial Competition Team Semi-Finalist, Chicago Illinois 1994.

**University of California at Berkeley**, Bachelor of Arts in Rhetoric and History 1990

*SPECIAL SKILLS*
Fluent in written and spoken Spanish.


Prior Expert Testimony
In December of 2007, I provided expert testimony in the areas of California Sentencing Law, and the Charging Practices of the San Francisco District Attorney's Office in *Cammerin Boyd v. CCSF*.

Publications
I have not had any literature published.

Rate
I have been retained by the San Francisco City Attorney's Office for the following rate:

-      $250.00/hour for document review, and preparation of a report
- 
-      $350.00/hour for testimony