Pages 1 - 46

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JEFFREY S. WHITE, JUDGE

KATHLEEN ESPINOSA, ET AL.,      )
                                )
                Plaintiffs,     )
                                )    No. C-06-4686 JSW
     vs.                        )
                                )
CITY AND COUNTY OF SAN          )
FRANCISCO, ET AL.,              )
                                )    San Francisco, California
                                )    Monday, April 1, 2013
                Defendants.     )
_____)


**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

**For Plaintiffs:**              Law Offices of John L. Burris
                                 7677 Oakport Street, Suite 1120
                                 Oakland, California 94621
                      **BY:**    **BENJAMIN NISENBAUM , ESQ.**
                                 **JOHN L. BURRIS, ESQ.**


**For Defendants:**              City Attorney's Office
                                 Fox Plaza
                                 1390 Market Street, Sixth Floor
                                 San Francisco, CA 94102-5408
                      **BY:**    **PETER J. KEITH, ESQ.**
                                 **BLAKE PHILIP LOEBS, ESQ.**


REPORTED BY: SARAH GOEKLER, CSR NO. 13446
Computerized Technology By Eclipse

1    Monday, April 1, 2013                               1:33 p.m.

2                        P R O C E E D I N G S

3            **THE CLERK:**  Calling case number C-06-4686, Kathleen

4    Espinosa, et al. versus City and County of San Francisco,

5    et al.

6        Counsel, please step forward to the podiums and state your

7    appearances.

8            **MR. NISENBAUM:**  Good afternoon, Your Honor.  Ben

9    Nisenbaum for the plaintiffs.

10           **MR. BURRIS:**  Good afternoon, Your Honor.  John Burris

11   for the plaintiffs.

12           **THE COURT:**  Good afternoon.

13           **MR. KEITH:**  Good afternoon, Your Honor.  I'm Peter

14   Keith for the defendants, and my colleague, Blake Loebs.

15           **THE COURT:**  Good afternoon.

16       All right.  Do you need to get settled in, Mr. Loebs?

17           **MR. LOEBS:**  I'm sorry?

18           **THE COURT:**  Do you need to get settled with your

19   documents?

20           **MR. LOEBS:**  Yeah, just to --

21           **THE COURT:**  Sure.  Go ahead.  Whenever you're ready.

22       Please come forward to the lectern and state your -- you

23   stated your appearance, Mr. Loebs?  Yes.  Okay.

24       All right.  So we're here for the pretrial conference.  I

25   wanted to make a couple of comments here which doesn't directly

 1   relate to the Espinosa case, which is there's another pretrial

 2   conference which is scheduled for the same time in the Young

 3   versus Holmes matter.  And I intentionally set them for the

 4   same time so that some of the discussion that -- what I'm going

 5   to have with the Espinosa counsel will apply to the -- in terms

 6   of housekeeping rules, will apply to the other case.

 7        And if counsel in the Young v. Holmes case, when the Court

 8   calls your case, has any questions or wants me to amplify what

 9   I said or even repeat it, I'm more than happy to do so.  But in

10   the interest of hopefully some efficiency here, I will hope not

11   to repeat some of the housekeeping rules that I'm going to be

12   discussing with the counsel in the first case, the Espinosa

13   case.

14        So the first thing I want to -- as a general matter,

15   there's a number of motions in limine on both sides with

16   respect to expert witnesses, and I'm going to rule on those

17   specifically, but I wanted to make a general ruling, if you

18   will, or a comment, which will govern both sides in questioning

19   their experts under Rule 702 and 703.

20        So I want to -- I'm going to admonish the parties that

21   when they question -- they're questioning their experts, they

22   are not to elicit testimony regarding their opinions on what

23   actually occurred in this case.

24        And by the way -- let me back up a second and say, the

25   Court will not be issuing a further written ruling on these

1    rulings.  They'll be in the transcript, and they'll also be

2    part of the minutes of the Court.  But I will not -- given

3    resource restraints, I will not have the ability to issue a

4    formal ruling.

5        So again, do not elicit any testimony regarding their

6    opinions on what actually occurred.  And giving a little bit

7    more specifics on that, the experts may certainly testify

8    regarding what facts they assumed to be true for purposes of

9    rendering their opinions.

10       For example, Dr. Keram, K-E-R-A-M, cannot testify that the

11   decedent actually pointed an eyeglass case at the officers to

12   simulate a gun, but she can testify that if a -- if the

13   decedent did so, such conduct would be, in her opinion -- if

14   that was her opinion -- of an attempted suicide by cop.

15       Of course, the opposing party in this case, the

16   plaintiffs, are free, under the rules of cross-examination and

17   Rule 702 and 703, to fully cross-examine -- well, and that

18   means in my hypothetical just now about Dr. Keram, the opposing

19   party is free to cross-examine any expert witness by asking

20   hypotheticals based upon facts they assumed and facts they

21   failed to assume that counsel, in good faith, believe should

22   have been taken into account by the expert witnesses.

23       So that's going to be a general rule, and that theme will

24   pervade all of my rulings with respect to the expert witnesses.

25   For those of you who've not been before the Court in trial

1    before and even for those who have, this will be a reminder,

2    the -- this relates to, what is the effect after a ruling in

3    limine?  And the effect of a ruling in limine is that it's the

4    order of the Court for the full trial, and the parties are not

5    to engage in self-help if a party, in their view, opens the

6    door -- believes that the other party has opened the door and

7    we're visiting a ruling.

8         In other words, if I say the witness, you know, shall not

9    testify about the color of the light, and the beneficiary of

10   that in limine ruling brings out, through the witness, the

11   color of the light, then the other side may feel, "Okay.  All

12   bets are off.  I can now fully examine that witness about what

13   was otherwise precluded by the Court."  Well, that -- you can't

14   do that.  You need to ask the Court to address the Court

15   outside the presence of the jury.  It would be in the mode of a

16   motion for reconsideration, based upon a willful and knowing --

17   a willful opening or reckless opening of the door.

18        So just because somebody goes into an area that you feel

19   opens or violates an in limine order that was otherwise in

20   their favor, neither side is free to engage in self-help and

21   say -- conclude that that door was open, because no doors are

22   open until I -- I have the keys.  And if I don't open the door,

23   it's not opened.

24        All right.  So now what I'm going to do is the parties

25   have briefed extensively their motions in limine, and I'm not

1   going to engage in any argument or even very much discussion.

2   I'm simply going to rule on the in limine motions that were

3   briefed by the parties.  And unless otherwise specified -- in

4   most cases will not be specified -- the reasoning is that which

5   is presented by the parties in their -- in the prevailing party

6   in their respective briefs.

7       So I'll start with -- in no particular order, I'll start

8   with the defendants' motions in limine, and then I'll move on

9   to the plaintiffs' motions in limine.

10      So Motion in Limine Number 1, which is the motion to

11  exclude certain evidence concerning Officer Morgado,

12  M-O-R-G-A-D-O, is granted, to the extent that the plaintiffs

13  seek to ask questions about this topic on direct under Federal

14  Rule of Evidence 404(b).

15      Although this was not briefed, I just want to make it

16  clear that nothing in this ruling prevents the plaintiffs from

17  asking questions of Officer Morgado on cross-examination under

18  Federal Rule of Evidence 608(b) as to which there is a

19  good-faith basis.  However, the plaintiffs will not be

20  permitted to introduce collateral evidence and will be

21  basically stuck with the answer of the officer.

22      Yes, Mr. Nisenbaum?

23          **MR. NISENBAUM:**  Thank you, Your Honor.

24      The question is, can we ask if he was terminated by

25  San Francisco Police Department?

1          **THE COURT:**  No.  It's excluded.  And the adjudication

2     of the board -- police board is not coming in this under 403.

3     I'm excluding it.

4          All right.  Motion In Limine Number 2, motion to exclude

5     certain portions of Plaintiffs' police practices expert Lou

6     Reiter, R-E-I-T-E-R, and related evidence is granted in part

7     and denied in part.

8          Mr. Reiter may testify regarding his opinion as to what

9     are proper police practices and whether, based upon assumed

10    facts, the defendants complied with such police practices.  But

11    Mr. Reiter may not comment on whether testimony by individual

12    witnesses is contradicted by other evidence.  And the

13    plaintiffs may not use -- shall not use Mr. Reiter's testimony

14    to introduce hearsay statements made by others.

15         Additionally, Mr. Reiter may not provide his legal

16    conclusions.  He cannot provide an opinion on an ultimate issue

17    of law.  For example, he may not and he shall not opine that

18    the defendants did not have probable cause or any exigent

19    circumstances to enter the premises or that any reasonable

20    officer would have known that the initial entry was

21    unconstitutional.

22         And -- so that the parties are honed in on exactly what

23    I'm talking about, they should see Docket 228, Exhibit A, which

24    is Mr. Reiter's report, at paragraph 22.  So it's 228 docket

25    number, Exhibit A, paragraph 22 of Mr. Reiter's report.

1    With respect to paragraphs 11 through 20 of Mr. Reiter's

2  reports, the defendants argue that his opinions in these

3  paragraphs are not relevant in this case -- to this case.  The

4  plaintiffs, on the other hand, do not explain how they are

5  relevant; therefore, the Court grants the motion to exclude the

6  testimony regarding his opinions in paragraphs 11 through 20.

7    The Court also grants the motion with respect to

8  Mr. Reiter's opinions on the post-incident investigation and

9  the security officers' interviews.

10    The motion is denied with respect to Mr. Reiter's opinions

11  on police practices with respect to responding to persons with

12  diminished capacity.  So that takes care of Number 2.

13    Motion In Limine Number 3 -- still on the defendants --

14  the motion to prohibit inappropriate impeachment by omission is

15  denied.

16    The offer of proof by the plaintiffs as to how they wish

17  to impeach the officer with what he didn't -- what they claim

18  he didn't say during an interview, to give his version of what

19  happened is -- that motion is denied.

20    The position taken by the defendants may be the

21  appropriate -- appropriate substance of redirect examination

22  for the officer to explain why he didn't mention certain things

23  that the jury might find to be material.  So that motion is

24  denied.

25    Motion In Limine Number 4, to exclude expert testimony by

1  expert witness Robert John- -- or excuse me.  Let me go back.

2  Motion to exclude testimony by expert witness Robert Johnson is

3  granted.

4      Number 5 -- Motion In Limine Number 5 to exclude evidence

5  of noneconomic damages by the decedent's estate is denied.

6      Number 6, motion to exclude questions and evidence related

7  to drug use or testing concerning the defendant officers is

8  granted.

9      Motion In Limine Number 7, the motion to exclude any

10  evidence about the officers, quote, other acts, unquote.  That

11  motion is granted.  But this order does not address the conduct

12  by Officer Morgado in the Hanes incident, which evidence I've

13  already dealt with by addressing Defendants' Motion In Limine

14  Number 1, and the fact that it could be improperly used to

15  impeach him under Rule 608(b).

16      All right.  So that takes care of the defendants' motions

17  in limine.  Now I'm going to move on to the plaintiffs' motions

18  in limine:

19      So Number 1 -- Plaintiffs' Motion Number 1, the motion to

20  exclude testimony by expert witness Dr. Emily A. Keram,

21  K-E-R-A-M, and her references to suicide by cop, so-called, and

22  prior bad acts of evidence is denied.

23      Number 2 -- Motion In Limine Number 2, which is to exclude

24  or limit testimony of expert witness Alexander Jason is denied.

25      Number 3, motion in limine to exclude the testimony of

1    evidence -- in evidence of alleged prior criminal history,

2    contacts with law enforcement, drug and alcohol use, and mental

3    health and medical history of the decedent and his family

4    members.

5         So I have a question addressed to the defendants since --

6    is what -- what is the prior bad act evidence regarding the

7    decedent's family members that -- well, I guess I should start

8    with Mr. Burris and Mr. Nisenbaum, since you're making the

9    motion:  What did you have in mind?  Because your motions were

10   very good about carefully identifying what you think is covered

11   by the motions you're making or responding to.  In that case,

12   you didn't do such a good job.  So what is it that you are

13   concerned about?

14        **MR. NISENBAUM:**  Actually, a lot of what Dr. Keram

15   talks about is when Asa was very young, his mother had

16   allegedly abused drugs.  Asa had been abused as a child

17   allegedly.  There are a number of factors that relate to that

18   when he was very young.  There were certain bad acts by the

19   parents, and I think that's what the Court was asking about.

20        **THE COURT:**  Right.

21        **MR. NISENBAUM:**  That go to their -- kind of how he

22   was raised, if you will.

23        **THE COURT:**  All right.  And what's your brief

24   response, Mr. Loebs, or --

25        **MR. KEITH:**  Mr. Keith.

1        **THE COURT:**  Yes.

2        **MR. KEITH:**  For the -- with regard to those incidents

3    early in Mr. Sullivan's life, those are one of the bases for

4    Dr. Keram's opinions and for her psychological evaluation of

5    Mr. Sullivan and his potential for suicide by cop.  And we

6    certainly don't intend to argue anything along the lines of the

7    sins of the parents be visited on the children.  And we think

8    that trying to keep this evidence out would really prejudice

9    our ability to put the bases for Dr. Keram's opinions before

10    the Court.

11        **THE COURT:**  I'm going to reserve on that at this

12    moment, but I'll tell you -- just sort of thinking out loud

13    with counsel here -- you know that because of not only that

14    Rule 702 and 703, but the Court's standing order, I try to

15    avoid -- I know otherwise inadmissible evidence can come in

16    through an expert, but then it's up to -- can be considered by

17    an expert, but then it's up to the Court whether the jury gets

18    to hear it.  And I want to think about this some more and go

19    back during a break and look at your papers.

20        My inclination is that to the extent Dr. Keram wants to

21    allude generally to the upbringing as an issue, that she might

22    be able to do that.  But what I don't want to have go through

23    the back door here is the specifics with respect to the parents

24    and other relatives.  I -- my feeling or my rulings are

25    different with respect to Mr. -- the decedent, Mr. Sullivan,

1  for reasons that are articulated in the briefs.  But with

2  respect to the family, it's pretty far afield.  And also, it

3  does -- notwithstanding Counsel's representation, does tend to

4  visit the sins of the parents on the child.

5      So I'm not ruling on that now, but I'm thinking out loud,

6  that's how I might -- wouldn't say it's Solomon-like but it may

7  be a middle ground.  I want to think about that, so there's no

8  ruling on Number 3.

9          **MR. LOEBS:**  Your Honor -- would it be helpful if we

10  identified those issues first?

11          **THE COURT:**  Yes.  Why don't you do that.  I don't

12  need to hear argument.  Just tell me what they are.  They're

13  not issues; they're facts.

14          **MR. LOEBS:**  That's what I meant.

15          **THE COURT:**  Yes, what are they?

16          **MR. LOEBS:**  I thought we could submit it.  I can

17  think of some of them, like the suicide attempt by a family

18  member that Dr. Keram testified that it then relates to the way

19  he views suicide.

20          **THE COURT:**  If they're -- they're not in your papers?

21          **MR. LOEBS:**  I think that one is.  I think that

22  several of them are.

23          **THE COURT:**  I'll go back and look at your papers.  If

24  I need more from you -- because once I do that, I have to give

25  the other side a chance to respond to be fair here.  So I'm

1 going to reserve on that at this moment.

2      This may be a kind of a trial-time decision, fact by fact,

3 depending upon -- but I want to hear -- the way I always

4 require this is I want to hear the opinion and the reasons in

5 sort of conclusory form, and then I can determine the need for

6 how I exercise my discretion in the jury hearing of what might

7 otherwise be inappropriate or inadmissible for (b) evidence.

8 But I'm not ruling on that one.  I'm just thinking out loud for

9 you.

10      The Motion in Limine Number 4, to exclude the testimony of

11 expert witness Anthony J. Brass.  Is this the guy that was a

12 prosecutor here?

13              **MR. BURRIS:**  Yes.

14              **THE COURT:**  Evidence of the SWAP warrant for

15 decedent's arrest and prior criminal history is denied.

16      Motion In Limine Number 5, to exclude testimony and

17 evidence of the alleged prior bad acts at 2 Garces,

18 G-A-R-C-E-S, by its tenant and guests denied.

19      The issue with respect to standing to object to a Fourth

20 Amendment search is going to be submitted to the jury in this

21 case as an issue of fact, and I think it's proper.  This

22 evidence is directly relevant to that issue.

23      6 -- Motion In Limine Number 6, the motion to exclude

24 evidence of the decedent's alleged drug and alcohol use and

25 testimony by expert witness Dr. John Mendelson,

1    M-E-N-D-E-L-S-O-N, and Nicholas P. Lemos, L-E-M-O-S, Ph.D., is

2    denied.

3         Number 7, motion to exclude or limit the testimony of

4    expert witness Kris Mohandie, M-O-H-A-N-D-I-E, and that's

5    K-R-I-S, Ph.D., denied.

6         Motion Number 8, motion to exclude testimony of Francis

7    Woo, W-O-O, and the forensic testing she performed is denied.

8         Motion In Limine Number 9, to bifurcate the issues of

9    liability and damages at trial is denied.  I think the evidence

10   is largely overlapping.

11        Number 10 -- Motion In Limine Number 10, to exclude

12   counsel and witnesses from pointing an eyeglass case at the

13   jury to simulate a weapon and from opening and closing the

14   eyeglass case, is granted in part and denied in part.

15        The defendants and their witnesses shall not point

16   anything at the jurors here.  Anything.  Because I think it

17   evokes emotional response, and it's not appropriate.  If you

18   want to point it out into space or have a witness demonstrate

19   in court, you can do it.  But I will not allow anything to be

20   pointed at the jury and involve them in the action here.

21        But having said that, without pointing anything at the

22   jurors, if the defendants and their witnesses want to snap an

23   eyeglass case shut to -- for whatever purpose they think is

24   appropriate -- simulating a firearm discharging -- that will be

25   allowed, but do not involve the jury other than hearing it.

1          Now, that takes care of the in limine motions.  Are there

2     any -- I've ruled on all of the in limine motions.  Are there

3     any questions -- without argument -- clarification, like I --

4     I'm speaking too fast and you didn't get it all, which is

5     perfectly possible.  The court reporter will be the first one

6     to tell you that.  But other than that, any questions?

7          Mr. Nisenbaum, Mr. Burris?

8               **MR. NISENBAUM:**  None.  I've already asked them.

9               **THE COURT:**  Any from the City and County?

10              **MR. LOEBS:**  No, Your Honor.

11              **THE COURT:**  So that takes care of the in limine

12    motions on both sides.  And I've mentioned to you that the

13    effect of that is none of that stuff is coming in unless a

14    party opens the door, and the Court rules that you've opened

15    the door or there's some change.

16         If a party introduces a theory that was not disclosed to

17    the Court, putting aside the fact I probably wouldn't allow it

18    anyway, but if something happened which might implicate the

19    ruling, you can ask to seek the Court outside the presence of

20    the jury, and I will reconsider, but it will not be lightly.

21    So it really needs to be a fairly substantial act by a party to

22    the prejudice of the other party in -- who's not able to put in

23    that evidence.

24         Now, I want to talk about exhibits and the objections to

25    them.  There were way too many of them.  And although I try,

1    before trial, as counsel knows, to squeeze out all the air in

2    these cases in terms of not having to involve the jury in

3    having you lay foundations in front of them because it

4    implicates their time as well as your allotted trial time, the

5    number of objections and the exhibit -- and the number of

6    exhibits that were -- as to which there were objections here

7    were way too many for this Court to handle.  It was just over

8    the top.  And it just seems like the parties are not talking to

9    each other.

10        So given the fact that we have some time before this case

11   is going to be tried, I'm ordering the parties to meet and

12   confer and revise their evidentiary objections and responses

13   thereto, in light of the Court's ruling on the motions in

14   limine.  Several of them are going to fall by the wayside

15   because of the Court's rulings in limine.

16        Moreover, if the parties want to obtain a ruling from the

17   Court on any evidentiary objections before trial, they will

18   need to reduce the number of these objections.  So to implement

19   that order, by no later than October 21st of 2013, the parties

20   shall submit their revised evidentiary objections and

21   responses, along with copies of the disputed exhibits on which

22   they seek a ruling from the Court prior to trial.  I'm

23   expecting this to be a much smaller number because we're right

24   at trial, although it's a few months away, and I really want

25   objections and things that really matter and not ticky-tack

1  foundational objections.

2       And the answer is, if I can't do it, even if the parties

3  have behaved in good faith, which I know they will in a

4  good-faith effort to narrow this down, then you're going to

5  have to make your objections and lay your foundation in front

6  of the jury, and it will come out of your time limits, which

7  are going to be posed in this case.

8       The same is true with respect to your objections to

9  deposition designations.  I don't have a problem with the

10  designations; it's the objections that you wanted me to rule

11  on, and I'd like you to take a crack at reducing those.  Many

12  of them will be reduced by the motions in limine, I think.  And

13  so please limit your objections to substantive disputes rather

14  than foundational objections or any objections that are easily

15  cured by the witness.  Otherwise, we'll have to do it in front

16  of the jury, and it'll take time.  And please submit your

17  revised objections and responses by October 21st, 2013.

18       Let me ask counsel how you intend to show or display the

19  depositions.  Are you going to show video, or are you going to

20  have somebody read them, Mr. Nisenbaum?

21          **MR. NISENBAUM:**  Just reading.  Reading into evidence.

22  Basically, we'll have a -- someone in the witness box reading

23  the answer, someone here questioning.  So question and answer.

24          **THE COURT:**  What about from the City and County?

25          **MR. KEITH:**  The same, Your Honor.  The only witness

1   who was designated.  Her deposition was not videotaped.

2           **THE COURT:**  All right.  Both sides know, being

3   experienced counsel, that jurors hate long readings.  Only

4   lawyers love deposition excerpts, and I think my own view is --

5   I think you share this:  They are overdone, and they lose their

6   impact, but I'll leave that up to you, but I notice there's a

7   lot of them, and you need to cut them down.

8       All right.  The next part of this is -- and specially

9   Plaintiffs' Counsel is -- actually experienced this.  Is the

10  way that the Court conducts its voir dire and selects the jury.

11  It will be the same -- for Mr. Nisenbaum and Mr. Burris'

12  benefits or detriment, it's the same way that it was done the

13  last time, but I'll explain that to other counsel in the court.

14      So the Court uses what some call the "modified Arizona

15  method."  I actually think it's a really fair way to select a

16  jury.  So all of the questions -- or at least initially, will

17  be to the entire array.  The jurors will have their numbers.

18  They will be seated in the pews as well as the jury box, and

19  they'll all have equal dignity.  In other words, Number 35 will

20  have the same dignity -- if we have 35 members -- as Number 1.

21  It will be fortuitous if 1 is in the jury box as opposed to 35

22  because we don't do 6-packs or 12-packs or any such packs; we

23  treat them all equally.

24      So all the questions initially will be to the array.  We

25  start out by having each juror -- each panel member stand up

1  and answer the questions that are on the white board here

2  (indicating), which are sort of name, rank and serial number

3  that would normally be on a questionnaire, but I don't use

4  questionnaires.  There have been issues with that.

5      So you'll get a chance to have each one of them speak.  If

6  there's issues with the language or hearing or whatever, at

7  least you'll have some inkling if they don't answer any of the

8  specific questions.  I don't allow each juror to be questioned

9  individually, even by the Court.  The questions are to the

10 array.  If we get a positive response, then we'll follow up

11 with every juror until we've learned each response to ground.

12     So after the white board is completed and we've gone

13 around -- and my courtroom deputy will give you a copy of that.

14         **MR. LOEBS:**  We were writing it down.

15         **THE COURT:**  Yeah, I know you were.  And you'll get

16 that, and the jurors will also have that.  They'll have it on

17 their screen.  They'll have it up there (indicating).  And

18 you'll have that as well.

19     And then the Court will then ask the voir dire that has

20 been proposed by the parties and agreed to by the Court.  And

21 the Court will address the parties' proposed voir dire at what

22 will be a further pretrial conference in this case.  There will

23 be another conference, and I'm going to address your voir dire

24 at that time.  But given the time to trial, I'm giving myself a

25 little bit more space here for that.

1     But it'll be -- most of the questions you asked, I think,

2     are -- usually asked in these cases are pretty standard and

3     appropriate and about police practices and activities with or

4     exposure to police or law enforcement or working in that genre.

5     I'm pretty liberal about giving those questions, but we'll get

6     to that.

7         So once we finish -- once the Court finishes asking its

8     questions, the Court will give the parties a brief period of

9     time, one side -- one lawyer per side, to follow up on factual

10    questions that have been raised, and I mean that.  This is not

11    an opportunity for you to show what you learned in your trial

12    advocacy course about how to pick a jury, how to persuade them.

13    It's facts.  Those of you who are old enough -- probably not

14    many in the court -- remember Sergeant Friday from Dragnet,

15    "Just the facts, ma'am."  Well, it's just the facts.

16        If they said something, and you feel it's appropriate to

17    follow up, and I didn't do it or you think it's appropriate for

18    your client to follow up, I will absolutely let you do that.

19    But it's not an opportunity to ask new and different questions

20    or to try to -- what I won't allow is what they do in state

21    court and have the jury talk about how they would deal with

22    hypothetical questions, and, you know -- assuming the law was

23    X, how would they rule.  I don't allow that in this court.  And

24    I'm more than able to sustain objections if it's inappropriate,

25    but I don't expect that from any of you because you're all

1    experienced here.

2         So then after you've had an opportunity to follow up on

3    the Court's questions, the next thing we do is we excuse the

4    jury -- the panel until further call of the Court, and then we

5    do all of the challenges and excuses at the same time.

6         So the first thing we'll do is we'll talk about hardship,

7    and we'll see if we can get consensus on excusing people for

8    hardship reasons.  Although, usually they try to do some time

9    screening at least for jurors up in the -- down in the jury

10   assembly room when they qualify the jury.

11        So we'll do hardships.  Then we'll do for cause

12   challenges, and the Court will rule -- so the hardships will be

13   crossed off the master list.  Then we'll do the for cause

14   challenges.  And then we will do the peremptory.  Peremptories

15   will be -- I'm treating each side as one party for purposes of

16   the peremptories.  And I'm going to choose three additional

17   jurors, so there will be nine jurors here.  No alternates.

18   It's a civil case.  It's federal court.

19             **MR. LOEBS:**  Your Honor, do you do the challenges in

20   front of the jury?

21             **THE COURT:**  No.  And that will become manifested in a

22   minute.

23        So we do the preliminary -- we do the peremptories.  You

24   have the statutory number, as if it was one party on each side.

25   And we do it double blind.  So neither side sees the other

1  peremptories as they're being selected until the very end

2  you'll be able to guess what you picked and who the other side

3  picked.

4      So the new rule that was just implemented in this court in

5  response to a Ninth Circuit ruling about passing the array and

6  all that.  You don't have to worry about that here.  We don't

7  pass anybody.  You're just going to do your strikes, and then

8  those jurors will be crossed off the list -- those array

9  members.  And then the first nine left standing will be your

10 jury.

11     So you can pretty much figure out if you have 35 or

12 40 panel members, whether you're ever going to get to the

13 people in the back.  But you'll at least know what's out there.

14     And when I was trying cases, I always liked to know what I

15 was facing if I struck somebody, and you will have a pretty

16 good idea and you can work the numbers any way you want.

17     Then we'll seat the jury.  We'll swear the jury, and we'll

18 go right into the trial.

19     So any questions about the jury selection?  Yes,

20 Mr. Nisenbaum?

21         **MR. NISENBAUM:**  How many peremptories per side?

22         **THE COURT:**  What's it in -- there's --

23         **THE CLERK:**  Three.

24         **THE COURT:**  Three.

25     **MR. BURRIS:**  The statutory is three, Your Honor, but

1    given that we have nine, I'm asking the Court, does that mean

2    we have one more?

3                **THE COURT:**  That's a very good question.  That's a

4    very good question.  I'm going to give you one more for the

5    following reason:  Normally, each side -- I'll give each side

6    one more.

7         Normally in a criminal case or where there are alternates,

8    you're required to do a separate process for the main jury and

9    the alternate jurors.  But given that we're not doing that

10   here -- they're all going to be members of the jury panel --

11   I'll give each side another challenge.  So that's four per

12   side.  And we'll have enough panelists to take care of any

13   eventuality.  So that takes care of the jury selection process.

14        Now, jury instructions.  Again, in the era of busy judges

15   and sequestration and all that stuff, I have to say this:  That

16   the proposed jury instructions are too lengthy and repetitive.

17   And as I stated in my standing order, the parties are

18   encouraged to keep disputed instructions to a minimum.  The

19   parties have not done so here.

20        In fact, it does not appear as though the parties have

21   stipulated to any jury instructions, which I think has to be a

22   first, at least that I've been able to see.  Therefore, the

23   Court is requiring the parties to meet and confer regarding

24   their proposed instructions in an effort to limit the number of

25   jury instructions requested and the number of disputed

1   instructions.

2        Now, to the extent that either party seeks an instruction

3   on federal law that is not included in the Ninth Circuit's

4   model jury instructions, the parties are admonished that they

5   need to make a showing of good cause.  This Court is not the

6   Ninth Circuit.  This Court does not make the law.  I'm not

7   saying the Ninth Circuit does, but they have more leeway.

8   They've given us these instructions.  And unless you can show

9   good cause, this Court is generally not inclined to supplement

10  the Ninth Circuit's approved instructions on federal law, based

11  on a statement from a case, without showing that the failure to

12  do so would be prejudicial.

13       If you had a Ninth Circuit case that said this instruction

14  was approved or required, that's one thing.  But if in the

15  course of a ruling on a summary judgment motion or a 12(b)(6)

16  motion, the Ninth Circuit says, you know, in passing, "We think

17  this is the law" -- unless it's a jury instruction, I'm going

18  to stick with the Ninth Circuit model instruction, unless

19  there's not one covering it.  But you all have tried a number

20  of these cases, and there's -- pretty much the law is well

21  stated by the Ninth Circuit.  And I don't tend to comment on

22  the factual evidence.

23       So as a rule of thumb, the more you want to insert facts

24  that kind of support your theme or your theory of the case, the

25  less likely I am to give it because then it puts the Court in a

1  position of essentially approving a -- certain facts or

2  commenting on the evidence.  And while I'm allowed to do it, I

3  don't ever do that.

4        So here's what I'd like to ask you, and I'll address -- I

5  was going to set a deadline for meeting and conferencing on all

6  those things and for filing revised proposed instructions and

7  supporting memoranda on the disputed instructions.  But it's

8  not clear to the Court when -- whether counsel -- Defense

9  Counsel will have time to do this before he goes on leave or

10 whether the deadline should be set for a time when Mr. Loebs

11 anticipates returning to work.

12       **MR. LOEBS:**  Your Honor, I think Mr. Keith would

13 largely be -- help doing the jury instructions.  I can still

14 consult with him, so I think I can do it even if I'm on leave.

15       **THE COURT:**  So let's do it on the same deadline as

16 before, which would be the October date that I gave you before.

17       **MR. LOEBS:**  October 21st?

18       **THE COURT:**  Yes, October 21st, for the revised

19 instructions.

20       Now, next question:  I wanted to -- there are a couple

21 questions that are sort of -- I wouldn't say unique to this

22 Court, but I think I would -- I'd like to think innovative, but

23 I won't -- that's for others to judge.  Some might think

24 radical.  It depends on whose ox is being perceived to be gored

25 here.

1      The first one has to do with the Court's proposed

2   instruction -- preliminary instruction regarding questions to

3   the witnesses from jurors and jurors discussing the case per --

4   prior to submission to them.  Let's discuss what I think is the

5   easier one first, which is the questions and the Ninth

6   Circuit's proposed instruction on it.

7      Do you have any problem with that?

8          **MR. KEITH:**  Your Honor, I was just about to grab it.

9          **THE COURT:**  Okay.  I assume Plaintiffs -- you've

10   heard that before?

11          **MR. NISENBAUM:**  We're fine with it.

12          **THE COURT:**  All right.

13          **THE CLERK:**  Can I just ask you a question regarding

14   the jury instructions for the October 21st.  Is that when

15   they're supposed to meet and confer by or --

16          **THE COURT:**  Submit by then.

17          **THE CLERK:**  Thank you.

18          **THE COURT:**  I won't give them a date to meet and

19   confer.  They can work that out.  I don't know their schedules.

20   Sufficient time so that it gets done and with substantial

21   agreement.

22          **MR. KEITH:**  I'm sorry, Your Honor.  Which

23   instructions are we looking at right now?

24          **THE COURT:**  I'm sorry?  I didn't hear what you said,

25   Counsel.

1          **MR. KEITH:**  I'm sorry, Your Honor.  Which

2    instruction --

3          **THE COURT:**  The one -- I don't know if these pages

4    are the right page numbers.  The one that's called "Conduct of

5    the Jury."

6          **MR. KEITH:**  Thank you.

7          **THE COURT:**  And it's the --

8          **MR. KEITH:**  I have it, Your Honor.

9          **THE COURT:**  All right.  Well, there's -- this is not

10   the one that has the ones with juror questions in it, I don't

11   believe.

12         **MR. NISENBAUM:**  I think it's the second handout that

13   we were provided.

14         **THE COURT:**  Yeah.  Actually, that's the juror

15   certification.

16      Okay.  Yes, now I have it.  So it's called "Questions to

17   Witnesses by Jurors," not the "Conduct of the Jury."  Sorry.

18      So do the defendants have any objection to that?  It's the

19   one that allows the jurors to ask written questions after the

20   lawyers are done with the witness but before they are -- the

21   witnesses are excused.

22         **MR. KEITH:**  Your Honor, the only objection I think

23   has to do with the time constraints for an already long trial,

24   that this may just end up making it even harder to try and

25   shorten it up.

1          **MR. BURRIS:**  Maybe it doesn't count.

2          **THE COURT:**  Pardon me?

3          **MR. BURRIS:**  Maybe it doesn't count?

4          **THE COURT:**  It doesn't count toward your time anyway,

5    number one.

6          Number two, in my experience -- and this is somewhat

7    surprising to me when I started doing this, they don't ask very

8    many questions.  Lawyers do a really good job bringing out what

9    they need to bring out.  The jurors have so much information to

10   assimilate, that they assume, usually correctly, that whatever

11   the lawyers want them to hear, they're going to hear.

12         My experience has been you get few, if any, questions.

13   And the ones you get -- usually, the procedure that I follow

14   is -- like a question during deliberation, the lawyers have an

15   opportunity to vet the question with the Court outside the

16   presence of the jury.  And if they don't approve, either I

17   won't give it or I'll modify it so it meets counsel's

18   objections; otherwise, the jurors feel like they're excluded.

19         **MR. KEITH:**  These are all very good reasons to do it.

20   I think the other issue -- I'm less concerned with it coming

21   out of the defendants' time or the plaintiffs' time than I am

22   with the fact that we got basically a three-week window before

23   Christmas week.  So trying to squeeze a -- trying to deal with

24   that logistical difficulty.

25         **MR. BURRIS:**  In my experience -- just so we're clear,

```
 1   I haven't done it in this court before -- I agree with the
 2   Court, that it really isn't time-consuming and it's quite
 3   helpful.
 4            MR. NISENBAUM:  It actually cuts time out.
 5            MR. BURRIS:  It causes the lawyers to maybe refocus a
 6   little bit, and I think the distinct advantages -- and it's not
 7   time-consuming.  At least my experience hasn't been.
 8            THE COURT:  I share the same one.  And I don't do it
 9   in criminal cases because usually one side or the other objects
10   to it.  So we'll give you that one -- the second one is under
11   "Conduct of the Jury." I don't remember, Mr. Burris and
12   Mr. Nisenbaum, I think I must have, unless somebody objected
13   and I sustained the objection, but this is something I've been
14   doing pretty routinely in civil cases.
15        And just for the record, in the provision of "Conduct of
16   the Jury," the bolded section which talks about -- the headnote
17   is "Do not communicate with anyone in any way.  Do not let
18   anyone else communicate with you in any way about the merits of
19   this case, or anything to do with it."  And then the language
20   that I insert, which is also something that has arisen in the
21   context of the Ninth Circuit's jury project, is as follows:
22        Quote, This prohibition also applies to communicating with
23   your fellow jurors; however, you may discuss with fellow jurors
24   the testimony as it is presented, provided that all jurors are
25   present for the discussion.  You are to keep an open mind
```

```
 1    throughout the case until you have fully deliberated, unquote.
 2         So what's Plaintiffs' view of that?
 3              MR. BURRIS:  We have no objections to that.
 4              MR. NISENBAUM:  Right.  We did that last time.
 5              THE COURT:  Okay.
 6              MR. NISENBAUM:  It actually promotes a kind of
 7    streamlining process because it facilitates the questions, and
 8    that focuses things up.
 9              THE COURT:  What's the defendants' view of that?
10              MR. LOEBS:  I think it's fine, as long as they're all
11    present and they're all participating, then I think that's --
12              THE COURT:  Yes.  In fact, I give them -- I'm sorry.
13              MR. LOEBS:  Especially for a longer trial.
14              THE COURT:  I actually tell them that the jury
15    room -- it needs to be in the jury room, and the door needs to
16    be closed rather than -- I don't want them deliberating around
17    the lunch table in the dining room or some bar after work
18    because that causes all kinds of problems.
19              MR. LOEBS:  When do you find they take the time to do
20    that?
21              THE COURT:  I would say it's based upon -- I've
22    discussed with jurors procedural issues after the fact, and
23    sometimes I submit written questionnaires just about the
24    procedures, and half of them don't ever do it.  They don't
25    even -- they don't do it.  The other half do it, and they find
```

1    it, as Mr. Burris and Mr. Nisenbaum said, very helpful because

2    if somebody says, "What did that witness say about X?"  And the

3    other jurors will say, "Well, he or she said Y," or something

4    like that.  And basically, they don't spend the rest of the

5    trial wondering, "Gee, what did that person say?" and never

6    getting the answer.

7           So it does make the process better because then they wind

8    up -- my guess is -- spending more time on what's really

9    important in the case rather than what color shirt was so and

10   so wearing or what did they say about where they went to their

11   undergraduate school, because they can resolve that beforehand.

12          So it's used well, and I've never heard of any abuse or

13   anything that would have been necessary to affect the outcome

14   of the trial.

15          **MR. LOEBS:**  Do you ask them to come in earlier or

16   stay later?

17          **THE COURT:**  No, no.  Usually, what'll happen is the

18   ones that do it, I find that during their breaks, the door is

19   closed and it's quiet, and they haven't -- they're not out in

20   the hall making their cell phone calls and all that kind of

21   stuff.  So, no, I don't do that.

22          As you said, it's enough of a burden being here when they

23   need to.  If I said stay later or come earlier -- if they all

24   came earlier, which they sometimes do, and they wanted to

25   deliberate when all of them were present, that has happened.

1      **MR. LOEBS:** Do they elect a foreperson to facilitate

2  discussions?

3      **THE COURT:** No. They just do it informally.

4  Sometimes the foreperson emerges, but I don't really get into

5  those details with jurors because it's their province, and I

6  don't want to invade it. So that one will be given without

7  objection.

8      So moving along then, the other handout that I gave you

9  was the juror decertification, which is really nothing more

10  than, you know, we really mean it when we say don't Tweet and

11  Twitter and do all those things.

12      Do you have any objection to that, Mr. Burris?

13      **MR. BURRIS:** No, Your Honor.

14      **THE COURT:** All right. Counsel?

15      **MR. KEITH:** No, Your Honor.

16      **MR. LOEBS:** We have a particular concern in this

17  case, Your Honor, that -- for this particular instruction

18  because of the internet, and there's been a lot of press

19  related to this case, and in particular we have a concern if

20  there's any sort of discussion about this case, especially

21  those matters that have been excluded in limine between now and

22  trial, those being right in front of the jury. So --

23      **THE COURT:** So what remedy are you asking?

24      **MR. LOEBS:** We just request that the jurors be

25  admonished before they go home each day about this.

1        **THE COURT:**  No, no.  That's required.  I will repeat

2    the conduct of the jury beforehand, and I will also give them

3    the sort of more layperson reason, that it's not just some

4    trick to prevent them from doing what they spent half their

5    life doing.  That the reasons for it is that the evidence that

6    they're allowed to hear, which is, you know, based upon

7    thousands of years of Anglo-Saxon jurisprudence, is there for a

8    reason.  And if they start getting stuff off the internet and

9    from other improper sources, it corrupts the entire process.

10   So if they understand why they're doing it, then I think it's

11   better than just saying, we have these rules.

12        Some judges make them turn in their phones; some judges

13   have jamming devices.  But that's just like forbidden fruit;

14   the jamming devices don't follow them home, and you can't

15   confiscate their phones.  So we'll discuss that, and I will

16   hammer that home many times.

17        Now, with respect to witnesses -- and some of you know

18   this already -- I prefer, in the absence of -- well, I prefer

19   that the parties call each witness one time, unless the parties

20   can show that they would be prejudiced by this procedure.

21        Now, one possible -- so therefore, for example, when a

22   plaintiff testifies, the defendant should conduct their direct

23   examination of that person -- of that plaintiff.  And the Court

24   will allow the defendants to reserve their right to move for --

25   make a JMOL Rule 50 motion as a matter of law, and the Court

 1   will only consider the evidence presented by the plaintiff as

 2   part of its case in chief, because I find that that flows

 3   better.  I know strategically, you'd rather have the witness

 4   testimony a certain way in a certain fashion, but I find it

 5   flows better, and it avoids the -- having witness coming up and

 6   down.

 7        Now, if it turns out that you feel that we really need

 8   this witness, it's something we may not go into, tell me and

 9   I'll certainly accommodate you.  This is not meant to really --

10   I generally let lawyers try their case.  So -- but that's --

11   the rule of thumb is one time.  They'll hear the witness one

12   time.  If there needs to be rebuttal, for example, because a

13   new matter is raised by another witness, absolutely if you have

14   the time left, I will allow you to do that.

15        Speaking of which, again, with respect to the time that

16   you have listed, I came up with 29 days of trial.  If I gave

17   you every minute that you all asked for with your witnesses,

18   there's no way.  I haven't had a trial in ten years here on the

19   bench that was anything close to that.  So here's what I'm

20   going to do:

21        Each side is going to have 35 hours to -- for direct and

22   cross-examination.  I'll explain the rules on that in a minute.

23   So that only relates to witness' testimony.  35 hours.  So when

24   you're up on your feet examining a witness on direct and cross,

25   or cross or redirect or recross, the time is running against

1  your 35 hours.

2      And I have to say, I think, personally, the 35 hours is

3  liberal.  Meaning, it's a lot of time, especially bucking up

4  against the holidays, as Defense Counsel has mentioned.  I'm

5  going to give you 30 minutes for opening statement and -- for

6  each side, which is not counted against your 35 hours.  And

7  105 minutes for closing argument.  One hour, three-quarters per

8  side for closing argument.  So it's 105 minutes for closing

9  argument.

10     Now, let me just talk about the timekeeping procedure that

11 we'll follow here.  So I sit from 8:00 to 1:30, Monday through

12 Thursday.  And just so you know, depending upon the situation,

13 if matters have to be taken out outside the presence of the

14 jury, we do have a furlough one Friday a month due to

15 sequestration where we're closed for -- basically closed for

16 business, except for Chambers.  But the court is closed

17 officially.

18     So the -- Congress has decided to suspend the

19 Seventh Amendment.  We have to do it one day a month now for

20 each division.  So we need -- we'll talk about that when we get

21 into trial, that we're not available on first Friday of each

22 month starting in May.  And that's only this fiscal year.  Next

23 year there may be no jury trials at all because there may be no

24 money to pay civil jurors.  So if you got any pull with the

25 leadership of Congress, this would be a good time for

 1   everybody's interest to help the cause of justice, but I

 2   digress.

 3        So we sit from 8:00 to 1:30 Monday through Thursday with

 4   two 15-minute breaks.  No lunch break.  The jury will be

 5   provided with a continental breakfast every morning, assuming

 6   there's any money left.  My courtroom deputy rolled her eyes.

 7   Unless Congress compounds that too.  But right now, you know,

 8   we'll presumptively have breakfast for the jury, which

 9   encourages them to get here earlier and break bread together.

10   If not, we'll figure out a way to -- I don't think we can

11   legally do what they do in state court and have you all pay for

12   it.  That's not legal in federal court.

13        So I expect the jury to be fully occupied during that

14   time.  And that's why I'm squeezing the -- what I call

15   "squeezing the air out of this case."

16        So counsel should be here by 7:30 each day to address any

17   matters that must take place outside the presence of the jury,

18   which would give us 30 minutes to do that, and we could always

19   take it up during breaks and also after 1:30.  It's easier to

20   get a jury that way because they have a life after trial, and

21   they know they can go home at 1:30.  Unless they're

22   deliberating, then I let them do whatever they want to do, as

23   long as they deliberate between 8:00 and 1:30.  But if they

24   want to stay later or they want to deliberate on a Friday and

25   they unanimously agree to that, then I allow them to do that,

1  and that's what I'll tell them when the time comes.

2       Now, as you all know, my practice is to always send

3  counsel to a final settlement conference between the pretrial

4  and the trial.  And I -- in this case, you will not have heard

5  all my rulings because we're having another pretrial

6  conference, which by the way, is going to take place on

7  November 4th at 2:00 p.m.

8       So I would like -- I'm going to order the parties to

9  attend a settlement conference by no later than October 15th,

10  2013.  And so my question, again, to Defendants' Counsel:  Will

11  Defendants be prepared to attend a settlement conference

12  without Mr. Loebs, or do the defendants request that the

13  settlement conference be scheduled when Mr. Loebs is not on

14  leave?

15            **MR. LOEBS:**  I think that will be fine.

16            **THE COURT:**  Great.

17            **MR. LOEBS:**  October 15th.

18            **THE COURT:**  Is that okay for you, Mr. Burris and

19  Mr. Nisenbaum?

20            **MR. NISENBAUM:**  Absolutely.

21            **THE COURT:**  And that will go to a -- unless you all

22  have a particular magistrate judge that you agree to, it'll go

23  to a randomly -- and he or she is available --

24            **MR. BURRIS:**  Judge, I want to be clear here.  I'd

25  rather have a preference for a judge than to be randomly sent

1    to a particular judge.

2         **MR. LOEBS:**  Maybe we can talk and agree.

3         **THE COURT:**  Why don't you discuss it.  If you

4    stipulate, I'd be glad -- of course -- and again, that's the

5    last day to complete it.  So that gives us a lot of flexibility

6    and time when the judge may be available.

7         So if you agree with -- for a particular judge, you might

8    want to let Chambers know, and I will call the judge and make

9    sure that he or she is available on the schedule that the Court

10   is setting.  Knowing how cooperative our magistrate judges are,

11   there's no doubt that they will make themselves available

12   for -- to try to settle this case.

13        Can you tell us what generally your -- just so we don't do

14   anything that interferes with your leave, Mr. Loebs, what your

15   schedule is at this point?

16        **MR. LOEBS:**  Right now, I'm planning to be back

17   October 1.  So that would accommodate the two October dates.  I

18   was thinking about my leave the time earlier until you gave me

19   the dates, but I'll probably be back for that on October.

20        **THE COURT:**  And if it changes, let the Court know.

21        **MR. LOEBS:**  Thank you.

22        **THE COURT:**  And we'll be accommodating for you.

23        **THE CLERK:**  Just so my minutes are clear, Your Honor,

24   counsel are going to meet and confer with regard to assignment

25   to a magistrate judge?

1          THE COURT:  Yes.

2          THE CLERK:  And submit it by when?

3          THE COURT:  How about -- would two weeks be

4    sufficient?

5          MR. LOEBS:  That's fine.

6          MR. BURRIS:  Sure.

7          MR. LOEBS:  Maybe just a few minutes.

8          THE COURT:  So let's say a week then since we had

9    that "be careful what you wish for" moment.  Let's say one week

10   from today.

11         THE CLERK:  April 8th.

12         THE COURT:  And reality is if you need to run it up

13   the flagpole, especially with the City and County, let the

14   Court know, and we'll give you some more time.

15         MR. LOEBS:  One week is fine.

16         THE COURT:  Before I discharge you -- because I

17   wanted to take under advisement and look at the papers with

18   respect to that one in limine motion, are there any other

19   matters, which does not include rearguing anything, that was

20   already submitted by documentation to the Court from the

21   plaintiffs' perspective?

22         MR. NISENBAUM:  Nope.

23         THE COURT:  From the defense perspective?

24         MR. LOEBS:  One thing, Your Honor, and it just

25   concerns a matter I touched on briefly, and that would be any

```
 1  pretrial statements by counsel that relate to matters that have
 2  been excluded from the trial in this case.  I would just like
 3  there to be an order that counsel not do that, try to --
 4  whether inadvertently, give statements to the press that puts
 5  forward whoever might be reading the paper, maybe the day
 6  before a jury selection --
 7           MR. BURRIS:  Your Honor, we don't have to be
 8  admonished on anything on what the Court has given.  I take
 9  that as a personal insult that I have to be admonished not to
10  do something.  I'm an experienced lawyer and so is Ben.  It's a
11  cheap shot, and it doesn't have to be made in this courtroom.
12           THE COURT:  You don't need to say that.
13           MR. BURRIS:  Well, he didn't need to say that either.
14           THE COURT:  I hear you, and the request is denied.
15     The Court has excluded evidence.  The canons of ethics to
16  which all of you are expected, and I know, knowing these
17  lawyers, will comply with is not to attempt to influence a jury
18  panel.  So it needn't be said, Counsel, and I don't take it as
19  a personal insult; you're representing your client, but it
20  isn't necessary.  When you're in federal court, you're running
21  with the big dogs, and the big dogs will bite you if you do
22  something that's inappropriate.  So for the quality of counsel
23  that we have here, that kind of thing needs not be said and
24  should not be said.
25     So anything else from the defense side, because I'm not
```

1  going to discharge you yet, because I want to take under

2  advisement.  I want to look at your papers with respect to that

3  one in limine ruling.

4          **MR. BURRIS:**  You want us to stick around?

5          **THE COURT:**  Yes, please, because I want to give you

6  my ruling so you'll have all my rulings.

7          **MR. BURRIS:**  Okay.

8      (Short recess was taken from 2:30 to 2:45 p.m.)

9          **THE COURT:**  We're back on the record.

10     What I think I'm going to do is I think I'm going to give

11 this a little bit more deliberation, and I'm going to take the

12 defendants up on their offer.  I would like to get a list of

13 the alleged incidents by family members.  And I'll give you the

14 deadlines for doing that.

15     What I'd like to get is specifically what the act is and

16 what the evidence would be in support of that.  In other words,

17 just a more -- so in other words, it might be, "Well, X is

18 going to testify about Y," or "There's going to be a medical

19 record," but I want an offer of proof with respect to that

20 rather than a proffer so I can know what I'm excluding or

21 including.

22     And then I'd like no more than one paragraph for each

23 piece of evidence, telling me precisely to what issue the

24 evidence is relevant.  So it would be -- let's say it would be,

25 you know, just make it up -- well, I'm not making it up from

1    the papers.  So somebody attempted suicide.  So what is the

2    evidence that proves that because then I can determine

3    whether -- you say it happened, but there's no concrete

4    evidence that it happened.

5         And precisely to what issue is it relevant and what is

6    your authority for its -- if you're the party seeking to get it

7    in.  Because I need to be -- there's a lot of issues as to

8    which this may be relevant.  And at the end of the day, I may

9    decide that under Rule 403, that it is -- you know, not clearly

10   more probative than prejudicial and exclude it anyway or allow

11   it in a more, shall we say, sanitized version.  So I want that

12   by April the 8th.

13        So again, it's the evidence and one paragraph -- no more

14   than one paragraph support -- so you tell me it's relevant to

15   the issue of X, and here's the authority for its admissibility.

16   I don't need extensive argument, especially if it's already in

17   your in limine papers.  And I'd like Plaintiffs' response by

18   the 15th.  And I will then issue a written ruling.  I won't

19   have to drag you folks back here again for that.

20        Now, let me ask if it's possible to -- Counsel, I was

21   thinking about and contemplating what we were talking about

22   before, especially given that I've ordered you to a settlement

23   conference, in requiring that the jury instructions come a lot

24   earlier, because I think it would be good for all of you to

25   know what the Court's jury instructions are going to be.  That

1    way to the extent there are disputes, the Court will have time

2    to reflect on those and then at the next calling of the case,

3    maybe if I need more argument, I can order that.

4         So I was -- I wanted to give you a much more aggressive

5    deadline of April the 15th to meet and confer and get me your

6    revised jury instructions, which hopefully -- again, I've given

7    you some pretty good guidance, which is to the extent it's

8    something covered by any Ninth Circuit pattern instruction,

9    that's going to be it.

10        But I would expect you all to sit down and meet and

11   confer, and you may think, "Hey, this may be" -- "this

12   particular instruction may be really helpful," but what I'm

13   trying to do is avoid reversible error and do what's fair to

14   the parties, so I don't want facts.  I want law, and I want

15   that -- I want that by April 15th.  If that slips, you know,

16   and you have good reason, I can push you back.

17        Mr. Burris?

18             **MR. BURRIS:**  I was going to say just as a cautionary

19   note -- at least as a basis, the Court is disinclined to have

20   jury instructions that focuses up individual facts --

21             **THE COURT:**  Correct.

22             **MR. BURRIS:**  -- as a -- if you find issue, then da da

23   da?

24             **THE COURT:**  Right, because that puts me in the

25   position of really commenting on the facts.  And it also

1    requires me to really expand -- and on the other side -- you

2    know, but if you find this, it becomes more like me giving a

3    closing argument.  It becomes more like asking for

4    interrogatories of the jury, and I'd rather let you -- you

5    folks are good lawyers.  You can argue all that, and we can

6    deal with it then.  If we have to deal with it in the special

7    verdict form, we'll deal with it there.  But I don't generally

8    like those in the instruction, unless the parties agree to it.

9         For example, you've agreed upon a statement of the case or

10   you will have agreed on the statement of a case and that's

11   agreed upon and that's neutral, then, of course, anything you

12   all agree to, if it's reasonable, I'll accept it.  So those

13   would be the new deadlines.

14        Again, if you -- if for some reason you can't meet the

15   15th, let me know and do a stipulation and order.  But I'd like

16   to get it reasonably close to then so I have a lot of time to

17   reflect, and you all will know by the time you start with your

18   magistrate judge in the settlement process, what the jury

19   instructions are going to look like, and what you are going to

20   be facing at trial.

21        **MR. BURRIS:**  Yeah, we've agreed, Your Honor, upon

22   Magistrate Judge Spero as the potential settlement judge --

23   settlement person.

24        **THE COURT:**  Is that correct?

25        **MR. LOEBS:**  Yes.

1      **THE COURT:**  Well, I will call him and tell him the

2   schedule and -- in advance of issuing the formal referral, just

3   as a courtesy, and make sure -- it's easy for us to sit up here

4   and bind our hard-working magistrate judges, but I don't like

5   to do that without checking with him.  But he's a team player,

6   and he'll help us out.

7      Anything else from the plaintiffs' perspective?

8      **MR. NISENBAUM:**  Just with respect to the format of

9   how you want the revised jury instructions.  As you know, we

10  submitted it in a certain way and then we each had our memos

11  for and against.

12     **THE COURT:**  What I would love to see is a -- my

13  fantasy is one set of agreed-upon instructions.  My reality is

14  a whole bunch of agreed-upon ones or withdrawn ones and then

15  ones that continue to be in dispute.

16     But again, with due regard with what I was discussing with

17  Mr. Burris, nonfactual and as tight -- as close as possible.

18  If the Ninth Circuit has preempted the field, if they said

19  anything on the subject, in my view, they preempted the field.

20     **MR. NISENBAUM:**  Got it.  That's actually very

21  helpful.

22     **THE COURT:**  Anything else?

23     **MR. LOEBS:**  Yes.  We had a request for some special

24  interrogatories for the jury.  Is that something we take up at

25  the next pretrial?

1          **THE COURT:**  If you're going to do that, at least meet

2   and confer, narrow your differences and --

3          **MR. LOEBS:**  Discussion.

4          **THE COURT:**  -- and submit that by April 15th.

5          **MR. NISENBAUM:**  I think we've already gone through

6   that process.

7          **THE COURT:**  You have?  Okay.  Well, if that's the

8   best you can do, I'll look at those and I'll rule on them as

9   they are.  But you're going to be meeting anyway.  Maybe

10  someone will see some sense in the other side's position.  Hope

11  springs eternal.

12         **MR. NISENBAUM:**  Always, always.

13         **THE COURT:**  Thank you very much, gentlemen.  I

14  appreciate the hard work.

15      (Proceedings concluded at 2:52 p.m.)

16                          ---o0o---

17  I certify that the foregoing is a correct transcript from the

18  record of proceedings in the above-entitled matter.

19

20  _____    April 24, 2013

21  Signature of Court Reporter/Transcriber   Date
    Sarah L. Goekler

22

23

24

25