JOHN L. BURRIS, STATE BAR NO. 69888
BENJAMIN NISENBAUM, STATE BAR NO. 222173
Law Offices of John L. Burris
Airport Corporate Centre
7677 Oakport Road, Suite 1120
Oakland, California  94621
Telephone:     510.839.5200
Facsimile:      510.839.3882
Email: bnisenbaum@gmail.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHLEEN ESPINOSA, et al;<br><br>       Plaintiffs,<br><br><br>    vs.<br><br><br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>       Defendants. | CASE NO.  C06 04686 JSW<br><br>**PLAINTIFFS' STATEMENT OF RECENT DECISIONS RE: SUBMITTED MATTERS**<br><br>Trial Date: September 8, 2014<br>Trial:  8:00 a.m.<br>Pretrial Conf.: August 4, 2014<br>Time:  2:00 p.m.<br>Courtroom 2, 4th Floor<br>The Honorable Jeffrey S. White |

Pursuant to Northern District of California Local Rule 7-3(d)(2), Plaintiffs hereby give notice to the Court and Defendants of the following recent California Court of Appeal and 9th Circuit decisions:

1. *Chaudhry v. City of Los Angeles , et al,* 2014 S.O.S. 11-55820 (9th Cir. May 19, 2014) (California's prohibition against pre-death pain and suffering damages in survival actions limits recovery too severely to be consistent with the deterrence policy underlying 42 U.S.C. Sec. 1983, so Code of Civil Procedure Sec. 377.34, disallowing pre-death pain and suffering, does

1    not apply to Sec. 1983 claims where the decedent's death was caused by a violation of federal law;

2    Decedent's estate has a viable claim under California Civil Code Sec. 52.1 against municipal

3    defendants, because a successful claim for police use of excessive force under the Fourth Amendment

4    provides the basis for a successful claim under Sec. 52.1. Parents have a liberty interest in the

5    companionship of their adult children and have a substantive due process cause of action under the

6    Fourteenth Amendment when the police kill an adult child without legal justification.)

7        A true and accurate copy of said decision is attached and incorporated herein by

8    reference as Exhibit 1.

9                                          Respectfully submitted,

10                                         **THE LAW OFFICES OF JOHN L. BURRIS**

11

12   Dated: May 13, 2014                   /s/ Benjamin Nisenbaum
                                            Benjamin Nisenbaum
13                                          Attorney for Plaintiffs

1
2
3                    UNITED STATES DISTRICT COURT
4                  NORTHERN DISTRICT OF CALIFORNIA
5
6   KATHLEEN ESPINOSA, et al;              CASE NO.  C06 04686 JSW
7              Plaintiffs,                 **PLAINTIFFS' STATEMENT OF RECENT
                                           DECISIONS RE: SUBMITTED MATTERS**
8
9         vs.                              Trial Date: September 8, 2014
                                           Trial:  8:00 a.m.
10                                         Pretrial Conf.: August 4, 2014
                                           Time:  2:00 p.m.
11  CITY AND COUNTY OF SAN FRANCISCO,      Courtroom 2, 4th Floor
    et al.,                                The Honorable Jeffrey S. White
12
13             Defendants.
14
15
16
17
18            # EXHIBIT 1
19
20
21
22
23
24
25
26
27
28

1

Espinosa v. City and County of San Francisco, Case No. C06 04686 JSW
Plaintiffs' Statement of Recent Decision re: Submitted Matters

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| RUKHSANA CHAUDHRY; MOHAMMAD AFZAL CHAUDHRY; USMA CHAUDHRY; MOHAMMAD UMAR CHAUDHRY; ESTATE OF MOHAMMAD USMAN CHAUDHRY; ISLAMIC SHURA COUNCIL OF SOUTHERN CALIFORNIA, *Plaintiffs-Appellants*, | No. 11-55820 <br><br> D.C. No. 2:09-cv-01592-RGK-RZ |
| And | |
| INTERFAITH COMMUNITIES UNITED FOR JUSTICE AND PEACE, *Plaintiff*, | |
| v. | |
| CITY OF LOS ANGELES; JOSEPH CRUZ; DAVID ROMO; COUNTY OF LOS ANGELES; LOS ANGELES COUNTY CORONER DEPARTMENT; ANTHONY HERNANDEZ; LAKSHMANAN SATHYAVAGISWARAN, *Defendants-Appellees*, | |
| And | |

2          CHAUDHRY V. CITY OF LOS ANGELES

LOS ANGELES POLICE DEPARTMENT;
WILLIAM BRATTON,

*Defendants*.

RUKHSANA CHAUDHRY;                    No. 11-55906
MOHAMMAD AFZAL CHAUDHRY;
USMA CHAUDHRY; MOHAMMAD               D.C. No.
UMAR CHAUDHRY; ESTATE OF              2:09-cv-01592-
MOHAMMAD USMAN CHAUDHRY;              RGK-RZ
ISLAMIC SHURA COUNCIL OF
SOUTHERN CALIFORNIA,
          *Plaintiffs-Appellees*,

          And

INTERFAITH COMMUNITIES UNITED
FOR JUSTICE AND PEACE,
                    *Plaintiff*,

          v.

CITY OF LOS ANGELES,
          *Defendant-Appellant*,

          And

JOSEPH CRUZ; DAVID ROMO;
COUNTY OF LOS ANGELES; LOS
ANGELES COUNTY CORONER
DEPARTMENT; ANTHONY
HERNANDEZ; LAKSHMANAN
SATHYAVAGISWARAN; LOS ANGELES

POLICE DEPARTMENT; WILLIAM
BRATTON,

*Defendants*.

---

RUKHSANA CHAUDHRY;
MOHAMMAD AFZAL CHAUDHRY;
USMA CHAUDHRY; MOHAMMAD
UMAR CHAUDHRY; ESTATE OF
MOHAMMAD USMAN CHAUDHRY;
ISLAMIC SHURA COUNCIL OF
SOUTHERN CALIFORNIA,

        *Plaintiffs-Appellees*,

And

INTERFAITH COMMUNITIES UNITED
FOR JUSTICE AND PEACE,

        *Plaintiff*,

v.

JOSEPH CRUZ,

        *Defendant-Appellant*,

And

CITY OF LOS ANGELES; DAVID
ROMO; COUNTY OF LOS ANGELES;
LOS ANGELES COUNTY CORONER
DEPARTMENT; ANTHONY
HERNANDEZ; LAKSHMANAN
SATHYAVAGISWARAN; LOS ANGELES

No. 11-55907

D.C. No.
2:09-cv-01592-
RGK-RZ

OPINION

4          CHAUDHRY V. CITY OF LOS ANGELES

POLICE DEPARTMENT; WILLIAM
BRATTON,

                              *Defendants*.

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted
January 6, 2014—Pasadena, California

Filed May 19, 2014

Before: William A. Fletcher, Milan D. Smith, Jr.,
and Paul J. Watford, Circuit Judges.

Opinion by Judge W. Fletcher

## SUMMARY[*]

### Civil Rights

The panel reversed the district court's decision striking a damages award, reversed the district court's Fed. R. Civ. P. 12(b)(6) dismissal of two claims, affirmed in part and reversed in part the district court's summary judgment, and vacated an attorneys' fee award in an action brought by three organizational plaintiffs and the family and estate of Mohammad Usman Chaudhry, who was shot and killed by a Los Angeles police officer.

In reversing the district court's decision to strike the estate's $1 million damage award, the panel held that California's prohibition against pre-death pain and suffering damages in survival actions limits recovery too severely to be consistent with the deterrence policy underlying 42 U.S.C. § 1983. The panel therefore held that Cal. Civ. Proc. Code § 377.34, disallowing pre-death pain and suffering, does not apply to § 1983 claims where the decedent's death was caused by a violation of federal law. The panel held that on remand, the district court could consider, in the first instance, whether the $1 million award was excessive.

The panel reversed the district court's Fed. R. Civ. P. 12(b)(6) dismissal of the estate's claim under California Civil Code § 52.1 against the City defendants, noting that a successful claim for excessive force under the Fourth Amendment provides the basis for a successful claim under

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

§ 52.1. The panel also reversed the district court's Rule 12(b)(6) dismissal of the parents' substantive due process claim on the grounds that parents have a liberty interest in the companionship of their adult children and have a cause of action under the Fourteenth Amendment when the police kill an adult child without legal justification.

The panel reversed the district court's summary judgment on the Chaudhrys' negligence claim under California law based on the coroner's failure to provide timely notice of Usman's death. The panel held that the Chaudhrys introduced enough evidence to create a jury issue on whether the coroner's attempts to locate Usman's family were reasonable.

The panel affirmed the district court's grant of summary judgment to the defendants on the intentional infliction of emotional distress and § 1983 substantive due process claims brought by Usman's siblings, but reversed as to their negligence claim against the County defendants. Finally, the panel vacated the district court's attorneys' fee award.

---

## COUNSEL

Olu K. Orange (argued), Orange Law Offices, Los Angeles, California; Donald W. Cook and Robert Mann, Mann & Cook, Los Angeles, California; Paula Dee Pearlman, Disability Rights Legal Center, Los Angeles, California; Ameena Mirza Qazi, Council on American-Islamic Relations, California, Anaheim, California, for Plaintiffs-Appellants.

Blithe Smith Bock (argued), Los Angeles City Attorney's Office, Los Angeles, California; Jules Solomon Zeman

CHAUDHRY V. CITY OF LOS ANGELES          7

(argued), Haight Brown & Bonesteel LLP, Los Angeles,
California; Alison McIlvaine Turner (argued) and Timothy T.
Coates, Greines, Martin, Stein & Richland LLP, Los Angeles,
California; Patricia E. Ellyatt, and Kenneth Maranga,
Maranga & Morgenstein, Woodland Hills, California, for
Defendants-Appellees.

---

## OPINION

W. FLETCHER, Circuit Judge:

Early in the morning of March 25, 2008, Mohammad
Usman Chaudhry ("Usman") was shot and killed by Los
Angeles Police Officer Joseph Cruz.  Los Angeles County
Department of the Coroner ("the Coroner") took custody of
Usman's body, but it did not notify his family of his death for
twenty-one days.  This delay prevented Usman's family from
burying him in accordance with their religion.

These events gave rise to a suit involving many plaintiffs,
many claims, and many defendants.  In this opinion, we
address some of the issues, affirming in part and reversing in
part.  In a memorandum disposition filed concurrently with
this opinion, we affirm on the remainder of the issues.

### I. Background

Usman was a 21-year-old Muslim man.  According to his
family, he was autistic and often wandered from home.  On
March 25, 2008, Officer Cruz and his partner, Officer David
Romo, saw Usman sleeping in front of an apartment building
in Los Angeles.  Suspecting that Usman might be a drug user,
they stopped their police cruiser and approached him.  Cruz

asked Usman to show his identification.  Usman complied.
Cruz gave the identification to Romo, who returned to the
cruiser to check for outstanding warrants.  Cruz testified at
trial that, while Romo was at the cruiser, Usman lunged at
Cruz with a knife.  Cruz drew his gun and fired four shots,
three of which struck Usman in the chest and abdomen.
When Romo returned from the cruiser, Cruz had a cut on his
hand.  Usman died at the scene.

The Coroner received Usman's remains and began to
search for his next of kin.  Usman's identification listed his
address as the Celebration Theatre in West Hollywood,
California.  On March 25, the day of the shooting, someone
at the Coroner ran a search in the records of the Department
of Motor Vehicles ("DMV").  The DMV printout contained
three addresses: the address of the Celebration Theatre, an
address in Los Angeles, and an address in Bellflower,
California.  Brian Elias, an investigator for the Coroner,
visited the Celebration Theatre, but it was closed.  Joyce
Kato, another investigator, then took over the search.  On
March 27, Kato ran a "comprehensive" search on Accurint,
a LexisNexis service for searching public records.  That
search disclosed several addresses connected with Usman's
name.  She made a note in the Coroner's file for Usman that
the "only address consistently listed" was that of the
Celebration Theatre.

The Bellflower address belonged to Usman's parents,
Rukhsana  and  Mohammad  Afzal  Chaudhry  ("the
Chaudhrys").  Kato "overlooked" that address and focused
her search on the Celebration Theatre.  She called and sent an
email to the Theatre.  On April 1, 2008, she sent a letter to the
Theatre and began pursuing what turned out to be a false lead.
On April 3, she requested information from the Los Angeles

Police Department ("LAPD"). She received a response on April 11 that indicated that Usman had listed the Celebration Theatre as his address. She received a response to her April 1 letter on April 15, but the response provided no useful information. On April 15, she double-checked her paperwork and noticed the Bellflower address in the DMV printout. That same day, she ran that address in Accurint, identified the Chaudhrys, contacted Usman's mother by telephone, and notified her of his death.

In the twenty-one days between Usman's death and the notification of his family, his body decayed. His mother testified that when she saw Usman's body, "His skin was all over. I couldn't touch him or kiss him. . . . His ears was all over, skin was all over, just like a bird face. . . . [H]is skin was falling off just like a bird face . . . like a small shrink face. . . . There was no eye in the socket." She testified further, "They cut his body without our permission. That is the worst thing you do with our person. We never allow. If we are there, we never allow to cut his body." The delay in notification and the decay of Usman's body prevented the Chaudhrys from burying their son in accordance with the religious customs of Islam.

Usman's Estate ("Estate"), Usman's siblings Usma and Mohammad Umar Chaudhry ("Usma and Umar"), and the Chaudhrys sued various City and County defendants, seeking damages and declaratory and injunctive relief. Three organizational plaintiffs—Interfaith Communities United for Justice and Peace ("ICUJP"), the Islamic Shura Council of Southern California ("Shura"), and the Los Angeles Community Action Network ("LACAN")—also sought declaratory and injunctive relief. The City defendants were the City of Los Angeles and the LAPD (collectively "City"),

chief of police William Bratton, and Officers Cruz and Romo. The County defendants were the County of Los Angeles ("County"), the Coroner, and Coroner officials Anthony Hernandez and Lakshmanan Sathyavagiswaran.

Plaintiffs brought claims against the City defendants under (1) the Americans with Disabilities Act ("ADA") and the Rehabilitation Act of 1973; (2) 42 U.S.C. § 1983, for unreasonable seizure and excessive force under the Fourth Amendment; and (3) state law, for assault, battery, false imprisonment, and wrongful death.  Plaintiffs brought claims against all the defendants under (1) § 1983, for violations of substantive due process and equal protection under the Fourteenth Amendment and of free exercise under the First Amendment; (2) § 1983, for implementing unconstitutional policies or customs, in violation of *Monell v. Department of Social Services*, 436 U.S. 658 (1978); (3) § 1983, for failure to train and for supervisory liability, in violation of *City of Canton v. Harris*, 489 U.S. 378 (1989); (4) 42 U.S.C. §§ 1985 and 1986, for conspiracy to violate the First, Fourth, and Fourteenth Amendments; (5) California law, for negligence, intentional infliction of emotional distress ("IIED"), and conversion and trespass to chattels; and (6) California law, for violations of civil rights under the California Constitution and California Civil Code §§ 51.5, 52(b), and 52.1.

The district court rejected most claims before trial.  The court granted the City defendants' motion to dismiss under Rule 12(b)(6) as to plaintiffs' § 1983 claims for violations of equal protection, free exercise, and substantive due process; plaintiffs' § 1985 and § 1986 claims for conspiracy; and plaintiffs' state-law claims for IIED, negligence, discrimination, and violation of California Civil Code § 52.1. The court dismissed LACAN's only claim, which alleged

unconstitutional discrimination against homeless and disabled people, because LACAN did not plead facts plausibly suggesting intentional discrimination. The court later granted summary judgment to Officer Romo on all claims; to the County defendants on all claims; to the City defendants on all claims except the Estate's and the Chaudhrys' claims for wrongful death and assault and battery; and to Officer Cruz on plaintiffs' claim for conversion. The court held that Shura and ICUJP lacked organizational standing under *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (1977), because there was no showing that Usman was a member of either organization. The court held further that Usman's siblings, Usma and Umar, lacked standing. It wrote, "Plaintiffs have failed to present any evidence indicating that Usma and Umar have a legally protected interest that falls into the category of an injury in fact."

The only remaining claims were the Estate's excessive force claim against Cruz, the Estate's assault and battery claim against the City, and the Chaudhrys' wrongful death claim against Cruz and the City. Those claims went to trial. At trial, the Estate and the Chaudhrys presented evidence contradicting Cruz's version of events. They presented evidence that Romo did not hear Cruz yell "knife"; that Usman's DNA was not on the knife with which he allegedly attacked Cruz; that the knife was a "boot knife," a kind of knife typically carried by police officers; and that the pattern and trajectory of Cruz's gunshots showed he shot Usman while Usman was collapsing to the ground, rather than while he was advancing toward Cruz. The jury found for the Estate and the Chaudhrys. It found that Cruz used excessive force, that the excessive force caused Usman's death, and that Cruz acted "reckless[ly], oppressive[ly], or malicious[ly]." The jury awarded $700,000 to the Chaudhrys for their wrongful

12        CHAUDHRY V. CITY OF LOS ANGELES

death claim under state law, and $1,000,000, based on
Usman's pain and suffering, to the Estate for its excessive
force claim under § 1983.

The City and Cruz filed renewed motions for judgment as
a matter of law or for a new trial. The district court denied
the motion for a new trial and denied the motion for judgment
as a matter of law as to the $700,000 award. The district
court granted the motion for judgment as a matter of law as
to the $1,000,000 award. It held that California law prohibits
recovery for pain and suffering in survival actions, and that
this prohibition is incorporated into § 1983. *See* Cal. Civ.
Proc. Code § 377.34.

The Estate and the Chaudhrys sought attorneys' fees
under 42 U.S.C. § 1988(b) and California Civil Code
§ 52.1(h), requesting a total of $1,007,849.25. They also
requested a contingency-fee modifier under California law.
*See Ketchum v. Moses*, 17 P.3d 735, 744–46 (Cal. 2001). The
district court awarded fees of $73,125.

Plaintiffs timely appealed most of the district court's
orders granting the defendants' motions to dismiss and for
summary judgment, its order vacating the Estate's
$1,000,000 damages verdict, and its reduced attorneys' fees
award. The City cross-appealed the attorneys' fees award.
Cruz and the City initially appealed the Chaudhrys' $700,000
verdict but later conceded that this part of the verdict should
stand.

## II. Discussion

Plaintiffs waived claims against some defendants by not
addressing them in their opening brief. *See Kim v. Kang*,

154 F.3d 996, 1000 (9th Cir. 1998).  For the purposes of this appeal, the remaining defendants are the City and Cruz (collectively "the City defendants"), and the County and the Coroner (collectively "the County defendants").      The following claims have been preserved for appeal and are addressed in this opinion:  (1) the Estate's claim for damages for pre-death pain and suffering under § 1983; (2) the Estate's claim under California Civil Code § 52.1; (3) the Chaudhrys' § 1983 claim that Cruz violated their substantive due process rights by killing Usman; (4) the Chaudhrys' negligence claim against the County defendants; (5) Usma and Umar's § 1983 claim for substantive due process violations and their state-law claims for IIED and negligence; and (6) plaintiffs' request for attorneys' fees.  In a memorandum disposition filed concurrently with this opinion, we address the remaining claims that have been preserved for appeal.

## A.  The Estate's Pre-Death Pain and Suffering Damages Under § 1983

Under California's survival statute, Cal. Civ. Proc. Code § 377.20, Usman's § 1983 claim survived his death.  *See Smith v. City of Fontana*, 818 F.2d 1411, 1416 (9th Cir. 1987), *overruled on other grounds by Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999) (en banc).  In survival actions, however, California does not allow a decedent's estate to recover for the decedent's pre-death pain and suffering.  Cal. Civ. Proc. Code § 377.34.  Because federal law is silent on the measure of damages in § 1983 actions, California's disallowance of pre-death pain and suffering damages governs unless it is inconsistent with the policies of § 1983.  *See* 42 U.S.C. § 1988(a); *Robertson v. Wegmann*, 436 U.S. 584, 589–90 (1978).  The district court found that § 377.34 is not inconsistent with § 1983 and struck the jury's

$1,000,000 verdict in favor of the Estate.  We review that decision de novo, *see EEOC v. Wal-Mart Stores, Inc.*, 156 F.3d 989, 992 (9th Cir. 1998), and reverse.

One of Congress's primary goals in enacting § 1983 was to provide a remedy for killings unconstitutionally caused or acquiesced in by state governments.  *See Monroe v. Pape*, 365 U.S. 167, 172–76 (1961), *overruled in part on other grounds by Monell*, 436 U.S. at 690; *Berry v. City of Muskogee*, 900 F.2d 1489, 1501–02 (10th Cir. 1990).  "The policies underlying § 1983 include compensation of persons injured by deprivation of federal rights and prevention of abuses of power by those acting under color of state law." *Robertson*, 436 U.S. at 590–91.    Whether a state-law limitation on damages applies in § 1983 actions depends on whether the limit is inconsistent with § 1983's goals of compensation and deterrence.  *Id.* at 591–92; *see Bell v. City of Milwaukee*, 746 F.2d 1205, 1239 (7th Cir. 1984), *overruled in part on other grounds by Russ v. Watts*, 414 F.3d 783 (7th Cir. 2005).  Neither the Supreme Court nor this court has addressed whether a state law denying pre-death pain and suffering damages is inconsistent with § 1983 in cases where an alleged violation of federal law caused the victim's death. The district courts in our circuit are divided.  *Compare, e.g.*, *Venerable v. City of Sacramento*, 185 F. Supp. 2d 1128, 1132–33 (E.D. Cal. 2002) (consistent), *with Guyton v. Phillips*, 532 F. Supp. 1154, 1166–67 (N.D. Cal. 1981) (inconsistent).

We begin our analysis with *Robertson*, in which the Supreme Court considered a Louisiana law that abated tort claims when a plaintiff died and was not survived by a spouse, child, parent, or sibling.  436 U.S. at 587.  The plaintiff in *Robertson* filed a § 1983 suit for malicious

prosecution but died before trial.  He was not survived by any
close relatives.  The tortious acts alleged in the suit had not
caused Robertson's death.  *Id.* at 586–87.  The Fifth Circuit
refused to abate his claim, holding that the Louisiana law was
inconsistent with the policies of § 1983.  *Id.* at 587–88.  The
Supreme Court reversed.  It held that Louisiana's abatement
law was not inconsistent with § 1983 for two reasons.  First,
the law did not undermine the compensatory goals of § 1983,
which the Court held did not require "compensation of one
who is merely suing as the executor of the deceased's estate."
436 U.S. at 592.     Second, the law did not undermine
deterrence because, "at least in situations in which there is no
claim that the illegality caused the plaintiff's death," an
official would have no way of knowing in advance whether
or not any particular victim would die without close relatives
"before conclusion of the § 1983 suit."   *Id.* & n.10.   The
Court also found it important that the Louisiana law would
apply in only a small number of cases.  *Id.* at 591–92.

   The Court's statement in *Robertson* that § 1983 does not
require compensation to the decedent's estate was made in a
case where the alleged violation of federal law did not cause
the decedent's death.  It is unclear whether the Court intended
its statement to apply when the violation did cause the death.
We need not decide that question here.  *Cf. Bell*, 746 F.2d at
1240 n.42 (declining to address whether § 1983 requires
compensation for loss of life "where the victim by virtue of
death cannot be made whole").  What is clear is that, with
respect to deterrence, the distinction between those violations
of federal law that cause death and those that do not is
crucial.  The Court in *Robertson* repeatedly distinguished
Louisiana's abatement law from cases "in which deprivation
of federal rights caused death."  *Robertson*, 436 U.S. at 594;
*see also id.* at 592 & n.10.

The practical effect of § 377.34 is to reduce, and often to eliminate, compensatory damage awards for the survivors of people killed by violations of federal law.  Section 377.34 limits damages in survival actions to the victim's pre-death economic losses.  *See People v. Runyan*, 279 P.3d 1143, 1151 (Cal. 2012).  In cases where the victim dies quickly, there often will be no damage remedy at all under § 377.34.  Even in cases of slow death where pre-death economic damages might be available, § 377.34's limitation will often be tantamount to a prohibition, for the victims of excessive police force are often low-paid or unemployed.  The same is likely to be true for prisoners whose death is caused by the deliberate indifference of jail or prison officials in violation of the Eighth Amendment.  *See, e.g.*, Bureau of Justice Statistics, U.S. Dep't of Justice, Profile of Jail Inmates, 2002, at 9 (2004), *available at* http://www.bjs.gov/content/pub/ pdf/pji02.pdf (reporting that, as of 2002, 83.5 percent of prison inmates had pre-arrest monthly incomes of less than $2,000).  Therefore, a prohibition against pre-death pain and suffering awards for a decedent's estate has the perverse effect of making it more economically advantageous for a defendant to kill rather than injure his victim.

Three of our sister circuits have addressed state laws comparable to § 377.34.  All three held that those state laws were inconsistent with § 1983 when the violation of federal law caused the victim's death.  In *Berry v. City of Muskogee*, the decedent, an inmate at Muskogee City-Federal Jail, was killed by fellow prisoners.  900 F.2d at 1492.  His widow brought a § 1983 suit against the city for violation of the Eighth Amendment, alleging that jail officials' deliberate indifference to the decedent's safety had led to his death.  *Id.* The Tenth Circuit rejected an Oklahoma law limiting damages in survival actions to property loss and "loss of

decedent's earnings between the time of injury and death."
*Id.* at 1504. The court wrote, "The [state limitation laws] are
not suitable to carry out the full effects intended for § 1983
cases ending in death of the victim." *Id.* at 1506. In *Bell v.
City of Milwaukee*, a Milwaukee police officer shot and killed
the decedent, planted a knife on his body, and then lied about
the circumstances of the killing. 746 F.2d at 1215–18. The
decedent's siblings and estate brought suit under § 1983. *Id.*
at 1224. The Seventh Circuit rejected Wisconsin laws
precluding recovery of damages for loss of life and punitive
damages in survival actions. *Id.* at 1239–41. The court
wrote, "[I]f Section 1983 did not allow recovery for loss of
life notwithstanding inhospitable state law, deterrence would
be further subverted since it would be more advantageous to
the unlawful actor to kill rather than injure." *Id.* at 1239.
Further, "[t]o disallow punitive damages," the court said,
"would seriously hamper the deterrence effect of Section
1983." *Id.* at 1241. Finally, in *McFadden v. Sanchez*,
710 F.2d 907 (2d Cir. 1983), the decedent was killed by
police officers during the course of an arrest, and a jury
awarded punitive damages. *Id.* at 908–10. The Second
Circuit rejected a New York law barring punitive damages in
survival actions. The court wrote, "[W]e have no doubt that
limitations in a state survival statute have no application to a
section 1983 suit brought to redress a denial of rights that
caused the decedent's death." *Id.* at 911.

We agree with the reasoning in these cases. Consistent
with *Berry*, *Bell*, and *McFadden*, we hold that California's
prohibition against pre-death pain and suffering damages
limits recovery too severely to be consistent with § 1983's
deterrence policy. Section 377.34 therefore does not apply to
§ 1983 claims where the decedent's death was caused by the
violation of federal law.

The City defendants argue that even if pain and suffering damages are available under § 1983, the jury's award of $1,000,000 was excessive in light of the evidence adduced at trial. Because the district court held that pain and suffering damages were categorically unavailable, it did not reach the argument that the $1,000,000 award was excessive. The district court is in the best position to assess the reasonableness of the award. We therefore remand to the district court to consider in the first instance a motion for remittitur.

## B. The Estate's California Civil Code § 52.1 Claim

The district court dismissed under Rule 12(b)(6) the Estate's claim against the City defendants under California Civil Code § 52.1, which provides a cause of action for violations of a plaintiff's state or federal civil rights committed by "threats, intimidation, or coercion." Cal. Civ. Code § 52.1. The district court held that § 52.1 requires evidence of discriminatory intent. After trial, the Estate moved to amend the judgment to reinstate its § 52.1 claim in light of the jury's verdict on its § 1983 excessive force claim. The district court denied the motion. We review de novo. *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 911 (9th Cir. 2012) (en banc).

The district court erred in dismissing the Estate's § 52.1 claim and in denying its post-trial motion to amend the judgment. The California Supreme Court has held that § 52.1 does not require proof of discriminatory intent. *Venegas v. Cnty. of L.A.*, 87 P.3d 1, 13–14 (Cal. 2004). The Estate won its excessive force claim under § 1983 at trial. The City defendants concede in their brief to us that a successful claim for excessive force under the Fourth Amendment provides the

basis for a successful claim under § 52.1. *See Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir. 2013) ("[T]he elements of the excessive force claim under § 52.1 are the same as under § 1983."); *Bender v. Cnty. of L.A.*, 159 Cal. Rptr. 3d 204, 212–15 (Cal. Ct. App. 2013).

The City defendants nonetheless argue that the district court acted properly. They contend that the Estate's § 52.1 claim is entirely duplicative of its § 1983 claim. We disagree. If the Estate had prevailed on its § 52.1 claim, it could have received a multiplier of its attorneys' fees to account for the risk of contingent representation. *See infra* at 31–32; *Ketchum*, 17 P.3d at 744–46. Such a multiplier is not available under § 1983. *See City of Burlington v. Dague*, 505 U.S. 557, 562–66 (1992). We therefore reverse the district court's dismissal of the Estate's § 52.1 claim and remand with instructions to amend the judgment to reflect the Estate's success on that claim.

### C. The Chaudhrys' Substantive Due Process Claim Against Cruz

The Chaudhrys brought a § 1983 claim against Cruz for violating their Fourteenth Amendment right to substantive due process. They alleged that Cruz's killing of Usman infringed their liberty interest in the companionship of their child. The district court dismissed that claim under Rule 12(b)(6), holding that the Chaudhrys had no legal interest in Usman's companionship once he reached the age of majority. Reviewing de novo, *see Lacey*, 693 F.3d at 911, we reverse. Our decisions recognize that parents have a liberty interest in the companionship of their adult children and have a cause of action under the Fourteenth Amendment when the police kill an adult child without legal justification. *See Porter v.*

20          CHAUDHRY V. CITY OF LOS ANGELES

*Osborn*, 546 F.3d 1131, 1136 (9th Cir. 2008); *Curnow ex rel. Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991).

On appeal, Cruz does not dispute that the Chaudhrys properly stated a substantive due process claim. However, he argues that we should affirm the district court because, he contends, the Chaudhrys' substantive due process claim is entirely duplicative of the state-law wrongful death claim on which they prevailed at trial. We disagree. Prevailing on their substantive due process claim under § 1983 would entitle the Chaudhrys to attorneys' fees, *see* 42 U.S.C. § 1988(b), while prevailing on their state-law wrongful death claim does not.

To succeed on their substantive due process claim against Cruz, the Chaudhrys must prove he shot Usman with the purpose "to cause harm unrelated to the legitimate object of arrest." *Porter*, 546 F.3d at 1140 (internal quotation marks omitted). After trial, the jury found that Cruz's conduct was "reckless, oppressive, or malicious." The verdict thus establishes that Cruz unreasonably killed Usman, but not that he acted with the purpose of harming him. On remand, the district court should reinstate the Chaudhrys' substantive due process claim against Cruz and conduct appropriate proceedings for its resolution.

D.  The Chaudhrys' Negligence Claim Against the County Defendants

The Chaudhrys sued the County defendants for negligence based on the Coroner's failure to provide timely notice of Usman's death. The district court granted summary judgment to the County defendants, finding as a matter of law

that the Coroner was not negligent.  We review de novo a grant of summary judgment.  *Heinemann v. Satterberg*, 731 F.3d 914, 916 (9th Cir. 2013).  We reverse.

California Government Code § 815.6 specifies when a public entity is subject to tort liability.  There is a rebuttable presumption of negligence under § 815.6 if the public entity violates a statute and "(1) the statute which was violated imposes a mandatory duty, (2) the statute was intended to protect against the type of harm suffered, and (3) breach of the statute's mandatory duty was a proximate cause of the injury suffered." *Braman v. State*, 33 Cal. Rptr. 2d 608, 610 (Cal. Ct. App. 1994).  The Chaudhrys contend that the Coroner had a mandatory duty under California Government Code § 27471(a) to "make a reasonable attempt to locate the family" of a decedent.

In *Davila v. County of Los Angeles*, 57 Cal. Rptr. 2d 651 (Cal. Ct. App. 1996), the California Court of Appeal held that § 27471(a) "[q]uite clearly" imposes on coroners "a mandatory duty to make a reasonable attempt to locate [a] decedent's family," and that one of the purposes of § 27471(a) is to allow family members control over the disposition of the decedent's remains. *Id.* at 653, 655.  Under *Davila*, the Coroner had a mandatory duty to make a reasonable attempt to locate and inform Usman's family of his death.

The County defendants argue that *Davila* was impliedly overruled by the California Supreme Court's recent decision in *Guzman v. County of Monterey*, 209 P.3d 89, 95 (Cal. 2009).  We disagree.  The Court in *Guzman* did not mention *Davila*, and *Davila* is easily distinguishable.  The statute at issue in *Guzman* imposed on the "operator of [a] water

system" a "duty to notify consumers of any water contamination." *Guzman*, 209 P.3d at 95, 98.  The statute did not impose an express duty on any other party, but the plaintiffs in *Guzman* argued it imposed an "implied mandatory duty" on the county in which a water system is located.  *Id.* at 98–99 (emphasis omitted).  The Court rejected that argument, holding that there was no such implied duty. By contrast, § 27471(a), the statute at issue here and in *Davila*, expressly imposes a duty on the coroner: "'Whenever the coroner takes custody of a dead body pursuant to law, he or she *shall make a reasonable attempt to locate the family*.'" *Davila*, 57 Cal. Rptr. 2d at 653 (emphasis in original) (quoting Cal. Gov't Code § 27471(a)).

The County defendants also argue that *Davila* is inconsistent with the rule cited in *Guzman* that there is no mandatory duty when the duty "itself involves the exercise of discretion." *Guzman*, 209 P.3d at 95 (citation omitted).  The County defendants point to two cases.  In *Ellerbee v. County of Los Angeles*, 114 Cal. Rptr. 3d 756 (Cal. Ct. App. 2010), the statute required a sheriff to file a writ of execution "in accordance with [the judgment creditor's] written instructions."  The creditor's instructions, in turn, requested the sheriff to act "promptly" and "as soon as possible." *Id.* at 762 (internal quotation marks omitted).  Those instructions did not impose any mandatory duty on the sheriff, who "retain[ed] complete discretion to determine how and when it is feasible to allocate departmental resources to effect service." *Id.*  In *Department of Corps. v. Superior Court*, 63 Cal. Rptr. 3d 624 (Cal. Ct. App. 2007), the statute provided that the Commissioner of Corporations "may" act under certain circumstances, but it did not "require any action at all." *Id.* at 634 (emphasis omitted).  As in *Ellerbee*, the

statute in *Department of Corps.* "grant[ed] the Commissioner 'pervasively discretionary' authority." *Id.* at 633.

The duty in § 27471(a) does not allow the sort of discretion allowed in *Ellerbee* and *Department of Corps.* Contrary to the County defendants' argument that § 27471(a) provides no way "to objectively measure the government's action," reasonableness is a quintessentially objective measure. *See, e.g.*, *People v. Williams*, 29 P.3d 197, 207 (Cal. 2001); *Potter v. Firestone Tire & Rubber Co.*, 863 P.2d 795, 810 (Cal. 1993); Restatement (Second) of Torts § 283 cmt. c (1965). We conclude that *Davila* is an accurate statement of California law and hold that the Coroner owed a mandatory duty to the Chaudhrys under § 27471(a). *See Davila*, 57 Cal. Rptr. 2d at 653.

Because the Coroner owed the Chaudhrys a duty under § 27471(a), summary judgment for the County defendants was appropriate only if, "after viewing the evidence and drawing every inference in the light most favorable to the [Chaudhrys], . . . no reasonable jury could find" that the Coroner did not make the required reasonable effort to locate Usman's family. *Frybarger v. Int'l Bus. Machs. Corp.*, 812 F.2d 525, 528 (9th Cir. 1987). We hold that the Chaudhrys introduced enough evidence to create a jury issue on whether the Coroner's attempts to locate Usman's family were reasonable.

In response to Plaintiffs' Rule 30(b)(6) notice to depose the Coroner Department, *see Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 797 n.4 (9th Cir. 2003), the Coroner produced Lieutenant Supervising Investigator David Smith as the "person most knowledgeable" of its policies. Smith testified that the DMV report containing the

Chaudhrys' address was in the Coroner's files.  He also testified that when the Coroner runs a DMV report, it does so within three days of the decedent's arrival.  The record in this case includes a printout of a DMV report from the Coroner's files dated March 25, 2008, the date of Usman's death. Investigator Kato's notes and declaration indicate that she ran a "comprehensive Accurint report" on March 27.  Her notes written on March 27 describe the Celebration Theatre as the "only address consistently listed" in the report, but not as the only address listed.  Kato's written notes for April 15 state, "I reviewed the decedent's paperwork, and I noticed an address in Bellflower on his DMV."  The Bellflower address was the Chaudhrys'.   Smith testified that when Kato reviewed Usman's paperwork on April 15, she apparently was "looking for something that she may have overlooked during her initial search."  He agreed that when Kato found the Chaudhrys' address in the DMV report, "she found something she overlooked."

Smith also testified that when the Coroner Department knows of multiple addresses, it "in all likelihood" sends a letter to any recent but non-current residential address or runs that address through Accurint.  Smith testified that running an Accurint report takes "five or ten seconds."  The DMV report listed the Celebration Theatre as Usman's most recent address, effective June 15, 2007.  It listed the Chaudhrys' address and a third address as effective January 24, 2007. When Kato noticed the Chaudhrys' address on April 15, she ran an Accurint report and discovered the Chaudhrys' identities.  That same day, she informed them of Usman's death.

Based on this evidence, a reasonable jury could find that the Coroner had the Chaudhrys' address in its files on the day

of Usman's death or, at the latest, two days later on March 27. The Chaudhrys' address, while not listed as current, was recent. Had Kato not "overlooked" the Chaudhrys' address in late March, she would have sent a letter or run the address through Accurint, discovered the Chaudhrys' identities, and then informed them of Usman's death. The only reason the Chaudhrys were not informed in late March was that Kato focused on only one of the addresses listed on the DMV report and did not double-check her paperwork until twenty-one days later. Under those circumstances, a jury could reasonably find that the Coroner did not make a reasonable effort to locate Usman's family. *See Dennis v. BEH-1, LLC*, 520 F.3d 1066, 1070 (9th Cir. 2008) (credit reporting agency negligent for "overlook[ing]" a court document "or fail[ing] to understand its legal significance"); *In re Harbin*, 486 F.3d 510, 523 (9th Cir. 2007) (lender bank "indisputably negligent in overlooking [a] title report showing [debtor's] status in bankruptcy proceedings"); *Am. Sur. Co. of N.Y. v. Heise*, 289 P.2d 103, 106–08 (Cal. Ct. App. 1955) (insurance agent negligent for "overlooking" information in a car-purchase contract).

## E.  Usma and Umar's Claims

Usma and Umar sued all defendants for the failure to timely notify them of Usman's death. They brought claims for negligence and IIED under state law and for violations of substantive due process under § 1983. The district court granted summary judgment to the defendants, holding that Usma and Umar lacked standing because they did not have a legal interest in the disposition of Usman's remains and therefore had not suffered an "injury in fact." We review de novo. *See Heinemann*, 731 F.3d at 916. We agree in part and disagree in part.

The district court did not refer to Article III of the Constitution, but its conclusion that Usma and Umar had not suffered an "injury in fact" necessarily means they lacked standing under Article III. We disagree with the district court that Usma and Umar lacked Article III standing. The three requirements for Article III standing are injury in fact, causation, and redressability. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Usma and Umar satisfy all three requirements. They introduced evidence that they suffered emotional harm (injury in fact) caused by the defendants' failure to timely notify them of Usman's death (causation). A damage judgment in their favor would compensate them for that harm (redressability). We recognize, of course, that damages are a poor substitute for timely notice of Usman's death. Damages are often a poor substitute for proper performance of a legal duty, but that does not mean damages do not provide redress within the meaning of Article III.

In holding that Usma and Umar did not suffer an injury in fact, the district court confused Article III standing with the merits of Usma and Umar's claims. If the defendants did not owe Usma and Umar any duty, their claims fail on the merits. But Article III "standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal." *Warth v. Seldin*, 422 U.S. 490, 500 (1975); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387 n.4 (2014) (noting that, unlike standing, "the absence of a valid . . . cause of action does not implicate subject-matter jurisdiction" (internal quotation marks omitted)). We therefore turn to Usma and Umar's claims on the merits. *See Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1047 (9th Cir. 2009) ("We . . . may affirm on any basis supported by the record.").

We affirm summary judgment for the defendants on the merits of Usma and Umar's IIED and substantive due process claims. Usma and Umar's IIED claim fails because there is no evidence showing that, in failing to provide timely notice of Usman's death, any defendant acted "with the intention of causing, or reckless disregard of the probability of causing, emotional distress." *Christensen v. Superior Court*, 820 P.2d 181, 202 (Cal. 1991). Usma and Umar's substantive due process claim fails because they had no property interest in Usman's remains. As long as a decedent's parents are alive, California law does not grant the decedent's siblings any right to possess the decedent's body. Cal. Health & Safety Code § 7100(a).

Usma and Umar's negligence claim against the non-County defendants also fails, for these defendants owed no duty to notify family members in a timely fashion. However, as we discussed above, the Coroner had a duty under state law "to make a reasonable attempt to locate the family." Cal. Gov't Code § 27471(a). Section 27471(a) is not expressly limited to any particular family members, and the full scope of the Coroner's duty appears to be an open question. It may be that the scope of § 27471(a) is limited by the order of priority contained in Health & Safety Code § 7100, even though such a limitation is not specified in § 27471(a). *Cf. Davila*, 57 Cal. Rptr. 2d at 655 (defining the interests protected by § 27471 in part by reference to § 7100). If § 7100 limits the family members to whom a duty is owed, the Coroner may have had no duty to provide timely notice to Usma and Umar. The district court did not address the scope of the Coroner's duty, and the parties have not briefed that question to us. The district court may address the question on remand.

### F.  Attorneys' Fees

After trial, the Estate and the Chaudhrys requested an award of attorneys' fees of $1,007,849.25.  The district court awarded attorneys' fees of $73,125.  We review de novo decisions determining the legal right to attorneys' fees; we review the calculation of fees for abuse of discretion. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008).  For the reasons that follow, we vacate the district court's attorneys' fees award.

### 1.  Fees Under Federal Law

A party who prevails on a claim under § 1983 is entitled to reasonable attorneys' fees unless special circumstances would render such an award unjust.  42 U.S.C. § 1988(b); *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).  The district court has discretion in determining what fees are "reasonable." *Hensley*, 461 U.S. at 433, 437.  However, the court must "provide a concise but clear explanation of its reasons for the fee award." *Id.* at 437.  When determining a reasonable fee award, the court must start by calculating the lodestar amount, which is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* at 433.  The court may then adjust the lodestar amount based on several factors, including the degree of success achieved by the prevailing party. *Id.* at 434.

### a.  The Lodestar Calculation: Reasonable Rate

Fee applicants have the burden of producing evidence that their requested fees are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Camacho v.*

*Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (internal quotation marks omitted).    "[T]he relevant community is the forum in which the district court sits." *Id.* at 979.   "Affidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community . . . are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).   Once a fee applicant presents such evidence, the opposing party "has a burden of rebuttal that requires submission of evidence . . . challenging the accuracy and reasonableness of the . . . facts asserted by the prevailing party in its submitted affidavits." *Camacho*, 523 F.3d at 980 (internal quotation marks omitted).

The Estate and the Chaudhrys carried their initial burden by submitting expert affidavits attesting that their requested fees were within the prevailing market rates for Los Angeles. The affidavits described plaintiffs' counsel's experience and skill, provided concrete numbers for billing rates at numerous Los Angeles law firms, and compared those rates to plaintiffs' counsel's rates.   The Estate and the Chaudhrys requested "hourly rates ranging from $275 to $710 for 12 attorneys and from $165 to $235 for at least 10 law clerks and paralegals."

The district court concluded that the expert affidavits "fail[ed] to prove" that plaintiffs' counsel were entitled to the market rates. The district court imposed a "blended rate of $325 per hour" for all attorneys and non-attorneys. The court did not explain its choice to impose a "blended rate" rather than different rates for the different attorneys and non-attorneys, as the Estate and the Chaudhrys requested.   In *Camacho*, we reversed a fee order that did not "distinguish between [the plaintiff's] three attorneys, though they each

sought different hourly rates."   523 F.3d at 980; *see also Carter v. Caleb Brett LLC*, 741 F.3d 1071, 1074 (9th Cir.), *amended*, 2014 WL 905767 (9th Cir. 2014).   Nor did the district court explain why, if a blended rate was appropriate, $325 was the proper hourly charge.   It did not explain why that rate "was in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Camacho*, 523 F.3d at 980 (internal quotation marks omitted).

b.   The Lodestar Calculation: Reasonable Hours

The Estate and the Chaudhrys requested fees based on 2,543.85 hours of work.   This was already a 10 percent reduction of the hours they contend they spent on this case. The City defendants sought an approximately 20 percent reduction of the requested hours (a 496.75-hour reduction). The district court went further, reducing the requested hours by 88 percent (a 2,243.85-hour reduction) and awarding fees for 300 hours of work.

"By and large, the [district] court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Moreno*, 534 F.3d at 1112.   A district court can reduce a lawyer's request for duplicative or unnecessary work, and it can impose up to a 10 percent reduction without explanation.   *See id.*   However, "where the disparity is larger, a more specific articulation of the court's reasoning in expected." *Id.* at 1111.   In *Moreno*, for example, we reversed a district court's 25 percent reduction for lacking specific explanation.   *Id.* at 1112; *see also Carter*, 741 F.3d at 1074 (reversing a nearly 50 percent cut for lack of explanation).

The court explained generally that the Estate and the Chaudhrys' fees request included "multiple duplicative efforts, excessive overstaffing, and unnecessary hours." It stated that "multiple attorneys and legal assistants attended and participated in certain conferences, depositions, court hearings, and trial, doing much of the same work. Many of the law clerks billed for duplicative note-taking or for training at trial or depositions." We held in *Moreno* that duplicative work is not inherently inappropriate, 534 F.3d at 1112, and a reduction of 88 percent requires a more specific explanation than that provided by the district court. As in *Moreno*, the court "gave no specific explanation as to which fees it thought were duplicative, or why." *Id.*

### c.  The Lodestar Reduction

After calculating the lodestar, the district court reduced the fee award by another 25 percent because of the Estate and the Chaudhrys' limited success on their claims. Because we hold that the district court erred in rejecting some of those claims, *see supra* at 19–20, that decision requires reconsideration.

### 2.  Fees Under State Law

Plaintiffs who prevail on a claim under California Civil Code § 52.1 are entitled to attorneys' fees. Cal. Civ. Code § 52.1(h). Unlike federal law, California law allows for a multiplier of the lodestar to compensate for the risk of contingent representation. *Ketchum*, 17 P.3d at 744–46. We have held that when a plaintiff succeeds on both federal and state claims that support a fee award, the state-law multiplier is available. *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478–79 (9th Cir. 1995).

The Estate requested a multiplier of the lodestar based on its claim under § 52.1. The district court rejected that request because it had earlier dismissed the Estate's § 52.1 claim. As we held above, that dismissal was incorrect. *See supra* at 19–20. The Estate is therefore eligible for a fees multiplier. The choice whether to award a multiplier, however, is within the district court's discretion. *Ketchum*, 17 P.3d at 746. On remand, the district court should consider whether the Estate should receive a fees multiplier and, if so, how large it should be.

### 3. City Defendants' Cross-Appeal

The City defendants cross-appeal the attorneys' fees award on two grounds. First, they argue the Chaudhrys were not entitled to any attorneys' fees because they prevailed on a state-law claim rather than a § 1983 claim. *See Mateyko v. Felix*, 924 F.2d 824, 828–29 (9th Cir. 1991). Second, they argue the Estate was entitled only to minimal fees because the district court struck all of its damages. Because we hold the district court should not have dismissed the Chaudhrys' § 1983 substantive due process claim against Cruz or struck the Estate's damages, *see supra* at 18, 20, we deny the City defendants' cross-appeal.

### Conclusion

We reverse the district court's decision to strike the Estate's $1 million damages award under § 1983. On remand, the district court may consider a motion for remittitur. We reverse the district court's dismissal of the Estate's claim under California Civil Code § 52.1 against the City defendants and the Chaudhrys' substantive due process claim against Officer Cruz under § 1983. We reverse the

district court's grant of summary judgment to the County defendants on the Chaudhrys' negligence claim under California law.   We affirm the district court's grant of summary judgment to the defendants on Usma and Umar's IIED and § 1983 substantive due process claims, but we reverse as to their negligence claim against the County defendants.  Finally, we vacate the district court's attorneys' fees award.  In a separate memorandum disposition filed concurrently with this opinion, we affirm all of the district court's other rulings from which the plaintiffs appealed.

We remand for further proceedings consistent with this opinion.  Each side shall bear its own costs on appeal.

**AFFIRMED in part, REVERSED in part, and REMANDED.**