1  DENNIS J. HERRERA, State Bar #139669
   City Attorney
2  CHERYL ADAMS, State Bar #164194
   Chief Trial Deputy
3  BLAKE P. LOEBS, State Bar #145790
   PETER J. KEITH, State Bar #206482
4  Deputy City Attorneys
   1390 Market Street, 6th Floor
5  San Francisco, California 94102-5408
   Telephone:     (415) 554-3868 – Loebs
6  Telephone:     (415) 554-3908 -Keith
   Facsimile:     (415) 554-3837
7  E-Mail:        blake.loebs@sfgov.org
   E-Mail:        peter.keith@sfgov.org
8  Attorneys for Defendants
   CITY AND COUNTY OF SAN FRANCISCO
9  HEATHER FONG, in her official capacity,
   JOHN KEESOR, MICHELLE ALVIS and
10 PAUL MORGADO

11 JOHN L. BURRIS, Esq., State Bar No. 69888
   BENJAMIN NISENBAUM, Esq., State Bar No. 222173
12 The Law Offices of John L. Burris
   Airport Corporate Centre
13 7677 Oakport Street, Suite 1120
   Oakland, CA 94621
14 Telephone:     (510) 839-5200
   Facsimile:     (510) 839-3882
15 E-Mail:        bnisenbaum@gmail.com
   Attorneys for Plaintiffs
16 KATHLEEN ESPINOSA, individually and as personal representative
   of the Estate of decedent ASA SULLIVAN,
17 A.S., By and through his Guardian ad Litem, NICOLE GUERRA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHLEEN ESPINOSA, as a personal representative of the Estate of decedent ASA SULLIVAN, et al.,<br><br>    Plaintiffs,<br><br>    vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>    Defendants. | Case No. C06-04686 JSW<br><br>**JOINT FINAL PRETRIAL CONFERENCE STATEMENT**<br><br>Conference Date:  August 4, 2013<br>Hearing Judge:    Hon. Jeffrey S. White<br>Time:             2:00 p.m.<br>Place:            Courtroom 5, 1301 Clay Street, Oakland, CA<br><br>Trial Date:       September 8, 2013 |

To facilitate the final pretrial conference set for August 4, the parties respectfully submit the following agenda items, to supplement the Court's agenda:

**1.    Orders re: audiovisual equipment & food.** The parties intend to use presentation equipment and respectfully request that the Court enter an order permitting them to bring equipment into the courthouse. The parties request the Court's guidance regarding the form of order so that they can prepare and submit proposed orders.

In addition, the parties understand that food is not permitted to be brought into the Oakland Courthouse; because of the length of the trial day, the parties respectfully request that the Court enter an order authorizing attorneys and parties to bring food into the courthouse.

**2.    Physical exhibits.** The parties intend to use physical exhibits and respectfully request that the Court enter an order permitting them to bring those exhibits into the courthouse. The parties request the Court's guidance regarding the form of order so that they can prepare and submit proposed orders.

**3.    Evidentiary objections and deposition designations.** Per the Court's instructions at the April 1, 2013 pretrial conference, the parties met and conferred to reduce the number of disputes, and submitted four documents related to evidentiary objections and deposition designations:

a.    The Court has already endorsed the parties' stipulation and proposed order addressing most of the parties' previous objections (Doc. 344 (stipulation); Doc. 362 (order).)

b.    The parties submitted a revised joint designation of the deposition of Margarita Wynn (Doc. 342), which contains the parties' remaining objections and the other side's response.

c.    Plaintiffs submitted revised objections to exhibits with Defendants' responses (Doc. 343), which lists Plaintiffs' remaining objections (and Defendants' responses).

d.    Defendants submitted revised objections to exhibits with Plaintiffs' responses (Doc. 341), which lists Defendants' remaining objections (and Plaintiffs' responses).

**4.    Proposed Jury Instructions and Verdict Forms.** Per the Court's instructions at the April 1, 2013 pretrial conference, the parties met and conferred to reduce the number of disputes and submitted revised proposed jury instructions on April 15, 2013. (Doc. 320 (joint proposed jury instructions); Doc. 319, 322 (Plaintiffs' points & authorities); Doc. 321(Defendants' points &

authorities). In addition, the parties submitted supplemental briefs regarding jury instructions on state law claims in the case. Doc. 348, 345 (Plaintiffs); Doc. 350, 346 (Defendants). The parties also submitted proposed special verdicts. Doc. 271, 272 (Plaintiffs); Doc. 323 (Defendants). Defendants recently submitted a revised proposed special verdict form that is shorter than their previous submission (Doc. 363). The Court has not yet made any rulings on these submissions and the parties would like to find out more about the Court's process for finalizing jury instructions and special verdict forms.

**5. Witness List.** There is a dispute between the parties about (1) the number of witnesses designated by Plaintiffs to testify about Mr. Sullivan's relationship with A.S., Mr. Sullivan's family history, and aspects of Mr. Sullivan's personality; and (2) the adequacy of Plaintiffs' disclosure of those witnesses' expected trial testimony.

<u>Defendants' Side</u>

Defendants request that the Court order Plaintiffs to reduce the number of witnesses designated to testify about Mr. Sullivan's relationship with A.S., Mr. Sullivan's family history, and aspects of Mr. Sullivan's personality; and further that the Court order Plaintiffs to provide a specific description of the testimony to be given by those witnesses who are permitted to testify.[1]

Plaintiffs originally designated 35 witnesses to testify about this subject matter at trial, and Plaintiffs provided substantially the same description of each witness's testimony. (Doc. 241-2 at pp. 8-19.) After meeting and conferring, Plaintiffs reduced to 21 the number of witnesses whom they will call to testify on this subject, a number that Defendants still consider excessive. Plaintiffs have not, however, provided the more specific descriptions requested by Defendants.

The number of witnesses still designated by Plaintiffs is excessive and the witnesses are cumulative. Plaintiffs' designation of so many witnesses – when it seems unlikely that Plaintiffs will actually call most of them – forces Defendants to waste time and resources preparing for cross-examination. Plaintiffs' refusal to provide specific descriptions of their testimony just compounds the burden and waste.

---

[1] Defendants do not require a more detailed description of the testimony to be offered by Ms. Espinosa (Sullivan's mother), Ms. Guerra (A.S.'s mother), or Sangh Sullivan (Sullivan's brother).

Plaintiff's request for the Court to again reconsider every motion in limine they lost is based on numerous inaccurate statements of the facts and the law, which Defendants would be happy to address if the Court feels it is necessary. One mistatement of fact, which Defendants believe should be corrected regardless, is Plaintiff's statement that "San Francisco Superior Court upheld the termination [of Officer Morgado], including the basis of the termination." On February 26, 2014, the San Francisco Superior Court ordered the City to vacate Officer Morgado's termination. The Court's order is stayed pending appeal.

Plaintiffs' Side

Defendants cry foul because they did not investigate or depose witnesses properly disclosed to them years ago. Now Defendants want Plaintiffs to provide detailed evidence of what each witness will testify to, and complain there are too many witnesses, even though Plaintiffs removed a large number of witnesses. The areas of their testimony have been described already, and there is no requirement of further detailed testimony. The number of witnesses is necessary to respond to Defendants use of an expert psychiatrist who will, if she holds true to form, claim to perform a psychiatric autopsy of Asa Sullivan, one that is done without the benefit of ever knowing him, and without talking to anyone who did know him. One can conceive of very few scenarios that offer such a ripe area to paint any picture of a person as desired. To that end, apart from any damages testimony each witness will provide, the witnesses will offer evidence that impeaches Dr. Keram's opinions in this matter. There is no requirement that such evidence be disclosed. In reality, Asa Sullivan was no social outcast or misfit. He was a popular person who had many friends who knew him well. He also could be defiant in the face of authority. These witnesses will all help prove that far from any type of suicide or death wish, Decedent's recalcitrance in the attic was the defiance he exhibited toward figures of authority. This is totally in-line with the perception that Defendant KEESOR and some other officers at the scene had of Decedent: That Decedent was simply "talking out of his a** (expletive)" as Defendant KEESOR put it, and something the officers encountered not infrequently in people they detained or arrested. The testimony of each such witness should be short and concise, consisting of their own experiences and knowledge of Asa's reactions to authority figures, and some testimony about damages. Since the witnesses would be called in Plaintiffs' case-in-chief for damages,

and Dr. Keram's testimony is no secret, it only makes sense for the witnesses to testify fully in Plaintiffs' case-in-chief.

Since the defendants have an expert who will select a very narrow, biased, and distorted view of a few events in Asa's life, Plaintiffs must respond with the full picture, in as complete a manner as possible. This is a door necessarily opened by the Court's ruling permitting Dr. Keram's suicide by cop testimony.

**6. Revised Exhibit List.** The parties' original joint exhibit list will require a few revisions to descriptions of exhibits, and the parties intend to submit a revised exhibit list closer to trial.

**7. Motion to Quash Subpoena.** Plaintiffs have served a trial subpoena on former Chief of Police Heather Fong. Defendants have objected to the subpoena and the parties have met and conferred, but without resolving this matter. The parties propose the following briefing schedule for a motion to quash. Defendants' Motion: August 6. Plaintiffs' Opposition: August 15. Defendants' Reply: August 22.

**8. Jury Selection.** The parties would like to know whether jury selection will occur on September 8, or on the prior Wednesday, September 3.

<u>Additional issues to be addressed:</u>

<u>Plaintiffs believe the following additional issues should be addressed at this Final Pre-Trial Conference, pertaining to matters that have been submitted and ruled on. Plaintiffs raise these issues respectfully mindful of the Court's admonition in its October 30, 2013 Order Continuing Pre-Trial Conference and Trial Dates (Document No. 347), regarding seeking leave for reconsideration. However, any such filing could violate L.R. 7-9(c)</u>'s prohibition against repetition of arguments in a motion to seek leave for reconsideration, and would carry with it the imposition of sanctions. In any motion seeking leave for reconsideration, Plaintiffs would be repeating their arguments. Nonetheless, Plaintiffs urge the Court to reconsider its position regarding Plaintiffs' Motions *in limine* 1, 3, 4, 5, 6, 8, and 9 (generally, the introduction of evidence of Decedent's prior acts unknown to Defendants), under FRCP 54(b).

FRCP 54(b) provides that any order issued by the Court which does not end the action as to any claims or parties "...*may be revised at any time before the entry of a judgment* adjudicating all the claims and all the parties rights and liabilities." (emphasis added). Even where a motion for reconsideration is disallowed, the Court has the inherent authority to modify its own prior order *sua sponte* under FRCP 54(b) any time before final judgment has been entered in a case, when justice so requires. ("While the Court finds the challenge to the Court's subject matter jurisdiction meritless, the Court also finds it has inherent power to revise its rulings when justice so requires any time before final judgment has been entered in the case." *U.S. v. Asarco, Inc.,* 471 F.Supp.2d 1063, 1067 (USDC, D. Idaho, 2005), citing FRCP 54(b).

Alternatively, Plaintiffs request the Court's guidance as to how to proceed in addressing these interlocutory issues:

9. <u>How did Decedent ASA SULLIVAN's history unknown to the Defendants inform the Defendants' conduct?</u>

The Court appears to have concluded that the prior acts of Decedent unknown to the Defendants in some manner affected or influenced the Defendants' conduct. Plaintiffs do not see how this is possible.

This trial is ultimately about the factual bases of the Defendants entry into 2 Garces, and what happened in the attic. The defendants' introduction of Decedent's background and certain alleged events of his background appear to be transparent attempts at nullification: Attempting to decide the case on deeply prejudicial facts that were unknown to the Defendants, appealing to the jury's emotions instead of the intellectual piecing together of evidence proving what happened in the attic. The Court should set forth on the record how the defendants' conduct was affected by Decedent's history. If the Court is unable to do so, Plaintiffs strongly urge the Court to reconsider its position on this point. This was the intention of the second portion (headed "B. The Introduction of Evidence of Prior Acts By Decedent Asa Sullivan Will Compromise The Fairness Of This Trial.") of the Supplemental Trial Brief Plaintiffs filed with the Court on October 21, 2013.

As Plaintiffs see it, this is matter of substantive section 1983 case law, as opposed to limiting the analysis to the Federal Rules of Evidence. Federal section 1983 case law squares clearly in

1  Plaintiffs favor on this point: It is well-settled section 1983 law that *Graham v. Connor*, 490 U.S. 386,
2  396 (1989) precludes consideration of evidence of which officers were unaware.  Whether that
3  evidence is helpful or hurtful to either side, the prohibition against its consideration "cuts both ways."
4  *Glenn v. Washington County,* 673 F.3d 864, 873, fn. 8.  This is so *even if the unknown information*
5  *corroborates officers' safety concerns*.  *Glenn, id*, fn 8. (emphasis added).

6  Defendants relied on the 9th Circuits ruling in *Boyd v. City and County of San Francisco,* 576
7  F.3d 938 (9th Cir. 2009). The facts of that case are materially different from this case.  However, even
8  apart from FRE 404(a) character evidence concerns, 9th Circuit section 1983 Excessive Force
9  jurisprudence subsequent to *Boyd, Id*, shows the basis of the admission of other acts in this case to be
10 outside of the Court's discretion:  *Glenn v. Washington County*, 673 F.3d 864, 873, fn. 8 (9th Cir.
11 2011)  *Graham v. Connor* prohibits the consideration of evidence unknown to the officers, even if it
12 corroborates their safety concerns.

13 10. <u>Plaintiffs are concerned there is an appearance of bias in the Court's evidentiary rulings
14 on Motions *in limine*</u>.

15 As the Court knows, prior to confirming their suspicions concerning Josh White's relationship
16 to the Court, Plaintiffs' counsel felt the Court had issued unduly biased rulings on its evidentiary
17 motions in this matter at the Pre-Trial Conference, held on April 1, 2013. The reasons for that belief
18 were set forth in Plaintiffs' Supplemental Trial Brief, filed on October 21, 2013. In short, the Court has
19 issued a set of evidentiary rulings that would allow this Fourth Amendment Excessive Force shooting
20 case to be decided on deeply prejudicial allegations pertaining to different, unrelated acts and events
21 from the subject-incident shooting, all of which were totally unknown to the Defendants, while,
22 conversely, precluding Plaintiffs from introducing any evidence of other acts of the Defendants.  Most
23 significantly, the fact that Defendant MORGADO was terminated from the San Francisco Police
24 Department for lying in a police report.  Even though Defendant MORGADO, in public court
25 documents, challenged the basis of his termination, San Francisco Superior Court upheld the
26 termination, including the basis of the termination.  Anyone reviewing the video evidence of the
27 Charles Haynes matter, while comparing it to Defendant MORGADO's police report of that incident,
28 would be hard-pressed to find that report to be anything but an outright lie, as the Court is well-aware

1 appears to be the case in this matter (comparing the interview of security guard Manuel Chanez to Defendant MORGADO's claims pertaining to what information he had that the unit at 2 Garces was currently considered to be "occupied" by Park Merced Villas, once Mr. Chanez contacted his dispatcher, before Defendant MORGADO forced entry into the occupied residence).  Notably, the Court has Mr. Chanez's interview in its possession, and the facts of the occupancy testified to by the Park Merced property manager support Mr. Chanez's account.

Notwithstanding this, the Court ruled that Defendant MORGADO's termination, and its basis, are totally excluded from trial.  Thus, the Court substantially favored the Defense in a ruling that violates the precepts of *Graham v. Connor,* 490 U.S. 386, 396 (1989), and violates *Glenn v. Washington County*, 673 F.3d 864, 873, fn. 8., while substantially disfavoring the Plaintiffs in a different evidentiary ruling on a similar issue, excluding Defendant MORGADO's termination and its basis. Respectfully, it appears that the Court has exercised its discretion heavily in favor of the Defense, and heavily against Plaintiffs, even where *Glenn v. Washington County*, 673 F.3d 864, 873, fn. 8 (9th Cir. 2011) and *Graham v. Connor, Id,* operate to exclude such evidence from the Court's discretion.  Thus, the substantive section 1983 law moots the defendants' 404(b) evidence, but the Court has ruled inappositely.

///

///

///

///

///

///

Plaintiffs believe reconsideration *sua sponte,* or on motion is appropriate. Plaintiffs respectfully seek guidance as to whether the Court will waive L.R. 7-9(c) prohibition against repetition of argument in a motion, and the sanctions that accompany it, and allow such a repetitive motion, or if the Court would consider these issues *sua sponte*. The concern is that the case must be decided on the evidence the officers were aware. If not, *Graham v. Connor* is simply not the standard for this case.

Dated: July 28, 2014

    DENNIS J. HERRERA
    City Attorney
    CHERYL ADAMS
    Chief Trial Deputy
    BLAKE P. LOEBS
    PETER J. KEITH
    Deputy City Attorneys

By: */s/ Blake P. Loebs*
    BLAKE P. LOEBS
    Attorneys for Defendants

Dated: July 28, 2014

    THE LAW OFFICES OF JOHN L. BURRIS

By: */s/ Benjamin Nisenbaum*
    BENJAMIN NISENBAUM, ESQ.
    Attorneys for Plaintiffs